MAYFIELD, a Minor, et al., Appellants,

v.

BOY SCOUTS OF AMERICA et al., Appellees.

[Cite as *Mayfield v. Boy Scouts of Am.* (1994), 95 Ohio App.3d 655.]

Court of Appeals of Ohio,
Lake County.

No. 93–L–099.

Decided May 31, 1994.

Thomas Repicky and Paul Knott, for appellants.

*George Lutjen,* for appellees Boy Scouts of America and Pack 157.

Joseph E. Mahoney, Judge.

Plaintiffs-appellants, William Mayfield, Jr., a minor, William Mayfield, Sr., and Peggy Mayfield, appeal from a decision of the Lake County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Boy Scouts of America and Boy Scouts of America, Painesville Troop 157 ("Pack 157").

The undisputed facts, taken in a light most favorable to appellants, are as follows. In 1991, appellant, William Mayfield, Jr. ("Billy"), was a member of Pack 157. On January 12, 1991, Billy attended, along with six other ten-year-old boys, Pack 157's annual "Klondike" campout at Camp Stigwandish in Madison, Ohio. The scouts were supervised by Larry Hutson, an adult boy scout volunteer leader, and James Reidl, a parent volunteer.

Prior to dinner on January 12, 1991, the boy scouts were permitted to go outside the cabin to collect sticks for a scout project while Hutson and Reidl remained inside the cabin. While the boys were outside, Billy was injured when he and another scout were pulling on a tree that was approximately six inches in diameter and fourteen to sixteen feet in height. As the tree broke, a part of the tree hit Billy in the face and right eye. Since then, Billy has undergone four eye surgeries and has a complete vision loss in his right eye.

On May 27, 1992, appellants filed a complaint against appellees, Boy Scouts of America, Pack 157, Hutson, Reidl, and John Doe(s), alleging in Count 1 a negligent failure to properly instruct and supervise Billy during the campout. Appellants, Peggy Mayfield and William Mayfield, Sr., also allege negligent supervision and instruction in Count 2 and seek damages for loss of services and consortium, emotional distress, and mental anguish.

In February 1993, Hutson and Reidl moved for leave to file motions for summary judgment instanter. Both Hutson and Reidl argued in their respective briefs that Billy's injury was not foreseeable.

On March 10, 1993, appellees filed a joint motion for summary judgment. Appellee, Boy Scouts of America, argued that there was no agency relationship with Hutson and Reidl to give rise to liability under the doctrine of *respondeat superior.* Appellee, Pack 157, argued that Billy's injury was not foreseeable. Attached to appellees' joint motion was the affidavit of George W. Spice, Area Director for the East Central Region of Boy Scouts of America. Spice averred that Boy Scouts of America is a federally chartered corporation that charters local councils as individual nonprofit corporations to make the scouting programs available on a wide basis. Spice also averred that these local councils then make the scouting program available to sponsoring organizations that actually imple-

ment the scouting program within the local communities. Spice further stated that Boy Scouts of America grants the sponsoring organization its own charter, and that Boy Scouts of America exercises no control or supervision over the sponsoring organization or its selection of volunteer leaders.

On March 19, 1993, appellants filed a responsive brief to appellees' motion. Appellants attached a copy of a letter sent from Boy Scouts of America to Hutson indicating that Boy Scouts of America's insurance program provided liability insurance to Hutson as an adult volunteer leader. Appellants also attached portions of Hutson's and Spice's depositions.

Hutson testified that Boy Scouts of America dictates the policies and procedures as well as the rules and regulations governing every level of the Boy Scouts of America, and that Pack 157 does not have separate rules apart from the national Boy Scouts of America. Hutson also averred that Boy Scouts of America provides, at a cost, the handbooks, manuals, equipment, and uniforms used by the scouts and volunteer leaders.

Spice testified that Boy Scouts of America's rules and regulations are discretionary at the local levels but that under certain circumstances appellee, Boy Scouts of America, could revoke the local council's charter for noncompliance with the rules and regulations, namely, if the sponsoring organization attempted to register girls or if it registered a leader that was homosexual, a convicted felon, or an atheist. Spice further testified that a majority of Boy Scouts of America's funds come from registration fees collected at the local levels.

A review of Spice's entire deposition testimony filed on March 9, 1993 indicates that Spice also testified that Boy Scouts of America has a policy that adults are required to be present as supervisors or as leaders at any youth activity, and that, within the literature written by Boy Scouts of America, there are training syllabuses for pack leaders.

Appellants also attached the affidavit of appellant, Peggy Mayfield, who averred that she believed an agency relationship existed between Hutson and Boy Scouts of America because of the boy scout uniforms, patches, booklets, and accessories provided for the scouts and leaders and Hutson's representation that Boy Scouts of America required constant adult supervision for all children who attend the camping trip. Peggy Mayfield also averred that she relied on this relationship to make her decision to send Billy to the campout.

The trial court granted appellees' motion for leave to file a motion for summary judgment, and appellants were ordered to file objections within nine days. Thereafter, in a judgment entry dated March 26, 1993, the trial court denied Hutson's and Reidl's motions for summary judgment and granted appellees' motions for summary judgment. In a *nunc pro tunc* judgment of April 5, 1993,

the court modified the reasoning of the March 26 order but did not alter its ruling. Appellants responded with a motion for reconsideration arguing that genuine issues of material facts existed as to whether Hutson and Reidl were agents of Boy Scouts of America.

On June 2, 1993, appellants voluntarily dismissed the remaining claims against Hutson and Reidl. Appellants filed a timely appeal and now present the following assignments of error:

"1. The trial court erred in granting defendant/appellee Boy Scouts of America's motion for summary judgment.

"2. The trial court erred in granting defendant/appellee Pack 157's motion for summary judgment.

"3. The trial court erred in only granting plaintiff/appellant [*sic*] nine (9) days in which to respond to defendant/appellees [*sic*] Boy Scouts of America [*sic*] and Pack 157's motions for summary judgment."

Ohio Rule of Civil Procedure 56(C) governs summary judgment motions and provides, in pertinent part, that:

" * * * Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered excepted as stated in this rule. * * * "

In construing Civ.R. 56(C), the Supreme Court of Ohio has stated that summary judgment may be granted if it is determined that: "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274. "The burden of demonstrating that no genuine issue exists as to any material fact falls upon the moving party requesting a summary judgment." *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. The nonmoving party is forced "to produce evidence on any issue for which that party bears the burden of production at trial." *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099.

Neither the weight of evidence nor the assessment of credibility should be determined by the court in deciding whether summary judgment should be

granted.  *Perez v. Scripps–Howard Broadcasting Co.* (1988), 35 Ohio St.3d 215, 218, 520 N.E.2d 198, 201–202.  Rather, all doubts or conflicts in the evidence must be construed most strongly in favor of the party against whom the judgment is sought.  *Morris v. Ohio Cas. Ins. Co.* (1988), 35 Ohio St.3d 45, 46–47, 517 N.E.2d 904, 906–907.  In most civil cases, the evidentiary standard must be "whether reasonable jurors could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict." *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202, 214.

It is with this standard of review that we examine appellants' assignments of error.

■    In the first assignment of error, appellants argue that the trial court erred when it granted summary judgment in favor of appellee, Boy Scouts of America.  Specifically, appellants assert that there were genuine issues of material fact as to whether Boy Scouts of America possessed the requisite right of control to give rise to a principal-agent relationship, which would invoke liability under the doctrine of *respondeat superior.*

Appellants raised the same argument before the trial court.  The trial court held in its *nunc pro tunc* judgment entry dated April 5, 1993:

"The maintenance of particular criteria for membership in the Boy Scouts (sexual preference, religion [*sic* ] inclination, etc.) does not rise to the level of control required to support an agency, and no further indicia of control are present in this case."

■    Under the doctrine of *respondeat superior,* "a master is liable in certain cases for the wrongful acts of his servant, and a principal for those of his agent." Black's Law Dictionary (5 Ed.Rev.1983) 681.  In determining whether an agency relationship exists, the Supreme Court of Ohio has held that "the relationship of principal and agent or master and servant exists only when one party exercises the right of control over the actions of another, and those actions are directed toward the attainment of an objective which the former seeks." *Hanson v. Kynast* (1986), 24 Ohio St.3d 171, 173, 24 OBR 403, 405, 494 N.E.2d 1091, 1094. Although the requisite degree of control has not been established, *id.* at 175, 24 OBR at 406–407, 494 N.E.2d at 1095, "the basic test is whether the employer has the right of control over the manner and means of the work being done." *Duke v. Sanymetal Products Co.* (1972), 31 Ohio App.2d 78, 82, 60 O.O.2d 171, 173, 286 N.E.2d 324, 327.  To determine this, each indicium of control must be viewed in relation to each other and the surrounding circumstances.  *Id.*

In the case *sub judice,* appellants argue that Boy Scouts of America possessed the authority to exercise control over its adult volunteer leaders, and that Hutson took action directed toward the attainment of Boy Scouts of America's objectives

outlined in its policies, procedures, rules, and regulations. Appellants argue that Boy Scouts of America's letter to Hutson and the testimony of Hutson and Spice support the existence of a principal-agency relationship or at least raise a material fact dispute as to its existence.

Boy Scouts of America argues that any incidental control that Boy Scouts of America has over a charter organization, such as Pack 157, is not coextensive with Hutson, individually, and does not rise to the level of the requisite control to establish an agency relationship between Boy Scouts of America and Hutson.

Our review of the record shows that there is some evidence that Boy Scouts of America retained a degree of direction and control over Pack 157 and Hutson. Boy Scouts of America's policies, procedures, rules, and regulations governed Pack 157 and its leaders. Boy Scouts of America provided Hutson with scouting booklets and manuals that included instructions on supervision and training. Boy Scouts of America's liability insurance covered Hutson as an adult volunteer leader, and Hutson was required to wear a particular Boy Scouts of America uniform at scouting activities. Boy Scouts of America also retained the authority to discharge Hutson if it was determined that Hutson was an atheist, a convicted felon, a homosexual, or if Hutson registered females into Pack 157.

Without weighing the evidence and assessing the credibility of the testimony, we cannot say, as a matter of law, whether or not the control exhibited by Boy Scouts of America was sufficient to create a principal-agency relationship. Accordingly, competing inferences can be drawn from these facts and pose genuine issues of material facts to be submitted to a jury.

▆ Alternately, appellants argue that even if Boy Scouts of America did not have a right of control over its adult volunteer leaders, a genuine issue of material fact exists as to whether Boy Scouts of America could be liable under the doctrine of agency by estoppel. Appellants raised the same argument before the trial court, which held that, "there being no actual control, the mere provision of a uniform, without more, is insufficient to establish an apparent agency."

▆ Under the doctrine of agency by estoppel, an employer may be held liable for the negligence or malfeasance of an independent contractor who is not an employee or servant. *Albain v. Flower Hosp.* (1990), 50 Ohio St.3d 251, 262, 553 N.E.2d 1038, 1048–1049. In *Albain,* the Supreme Court of Ohio determined that the doctrine of agency by estoppel was not applicable to impose liability on the hospital for the negligent acts of the independent physician with staff privileges. In reaching its decision, the court stated that agency by estoppel can be established only if a plaintiff affirmatively demonstrates that the "principal" made affirmative representations leading a third party to believe that the negligent party was an agent or employee, and the third person was induced by these

representations to rely on the appearance of a principal and agent or master and servant relationship. *Id.* at 263, 553 N.E.2d at 1049–1050.

Here, appellants assert that Boy Scouts of America made representations and committed affirmative acts which led appellants to believe that Hutson and Reidl were Boy Scouts of America's agents. Appellants support this with Hutson's testimony that appellee, Boy Scouts of America, required its volunteer leaders to purchase and wear identical uniforms, purchase official Boy Scouts of America accessories and supplies, and follow Boy Scouts of America's particular policies, procedures, rules, and regulations. Appellants further assert that the affidavit of appellant, Peggy Mayfield, demonstrates the requisite reliance element on the relationship between appellee, Boy Scouts of America, and Hutson.

Boy Scouts of America does not dispute these facts but claims that these actions were insufficient to establish an agency by estoppel. Boy Scouts of America further asserts that appellants' reliance was misplaced on Hutson's representation rather than Boy Scouts of America's representations.

When we view the evidence in the light most favorable to appellants, appellants have established the required elements of an agency by estoppel as a matter of law. The issuance of uniforms and accessories along with the policies, procedures, rules, and regulations by appellee, Boy Scouts of America, may be sufficient to constitute affirmative representations. Boy Scouts of America does not present any evidence to the contrary. Although appellant, Peggy Mayfield, states her reliance on Hutson's statements, she also states her reliance on Boy Scouts of America's representations. Therefore, the trial court improperly granted Boy Scouts of America's motion for summary judgment on the issue of agency by estoppel.

Appellants' first assignment of error has merit.

■ In the second assignment of error, appellants assert that the trial court erred when it granted summary judgment in favor of appellee Pack 157. Specifically, appellants assert that the court granted summary judgment based upon the absence of an agency relationship between Hutson and Pack 157, but that Pack 157 never raised this issue before the court.

■ In a motion for summary judgment, the moving party bears the burden of showing that there are no genuine issues as to any material fact. *Harless, supra,* 54 Ohio St.2d at 66, 8 O.O.3d at 74, 375 N.E.2d at 47–48.

"Reading the requirement of *Harless* * * * in conjunction with Civ.R. 56 and 7(B)(1), it can readily be seen that the moving party must state specifically which areas of the opponent's claim raise no genuine issue of material fact * * *.
" * * *

"Rather than eliminate the non-moving party's burden, the requirement that the moving party, here appellee, be specific in his reasons for requesting summary judgment provides the non-moving party with the information needed to formulate an appropriate response as required by Civ.R. 56(E)." *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801; *Harvey v. Astatic Corp.* (Dec. 6, 1991), Ashtabula App. No. 90–A–1570, unreported, at 5, 1991 WL 260157.

Upon a review of the record, it is clear that appellee Pack 157 did not assert the absence of liability because it had no agency relationship with Hutson or Reidl. Instead, Pack 157 asserted that there was no negligent action by either Hutson or Reidl to impose liability on Pack 157. As a result, appellants addressed only this issue in their responsive motion and did not have the opportunity to formulate a sufficient response or submit evidence to counter a claim that there was no agency relationship.

Appellee Pack 157 does not dispute these facts but argues that the error was harmless because appellants addressed the issue of an agency relationship in its motion for reconsideration. However, our review of appellants' motion for reconsideration shows that appellants again addressed the existence of an agency relationship between Boy Scouts of America and Hutson only.

Thus, appellants did not have a meaningful opportunity to respond because Pack 157 failed to plead specifically or provide any evidence to support the absence of an agency relationship between itself and Hutson or Reidl. Therefore, the trial court improperly granted Pack 157's motion for summary judgment on the basis of an issue not raised or argued by Pack 157.

Appellants' second assignment of error is meritorious.

In the third assignment of error, appellants assert that the trial court erred when it gave appellants only nine days to respond to appellees' motion for summary judgment.

As this court has concluded in appellants' first and second assignments of error, the trial court improperly granted summary judgment in favor of Boy Scouts of America and Pack 157. Thus, this third assignment of error no longer presents a justifiable controversy and is, therefore, moot.

App.R. 12 provides in part that:

"(1) On an undismissed appeal from a trial court, a court of appeals shall do all of the following:

"(a) Review and affirm, modify, or reverse the judgment or final order appealed;

"(b) Determine the appeal on its merits on the assignment of error set forth in the briefs under App.R. 16, the record on appeal under App.R. 9, and, unless waived, the oral argument under App.R. 21;

"(c) *Unless an assignment of error is made moot by a ruling on another assignment of error,* decide each assignment of error and give reasons in writing for its decisions. \* \* \*" (Emphasis added.)

Accordingly, we are not compelled to address appellants' third assignment of error.

Based upon the foregoing, appellants' first and second assignments of error are sustained, the trial court's judgment is reversed, and the matter is remanded for further proceedings not inconsistent with this opinion.

*Judgment reversed and cause remanded.*

FORD, P.J., and NADER, J., concur.