DECISION AND JUDGMENT ENTRY
This is an appeal from a Meigs County Common Pleas Court judgment that ordered the foreclosure of a mortgage held by the Ohio Valley Bank (hereinafter "OVB" or "the bank"), defendant below and appellee herein, on property owned by Frank Herald Jr., plaintiff below and appellant herein. The following errors are assigned for our review:
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY ITS DECISION GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT WHEN A GENUINE ISSUE OF MATERIAL FACT EXISTED AS TO THE AMOUNTS OWED BY THE APPELLANT ON THE PROMISSORY NOTES."
SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY AWARDING ATTORNEY'S FEES AND COSTS TO THE APPELLEE THAT WERE NOT SUPPORTED BY CREDIBLE EVIDENCE AND WITHOUT A HEARING."
Appellant has been involved in a variety of business ventures in the Meigs County area for most of his life. In 1996, he planned a residential real estate development project known as "Appletree Estates."[1] He met with a OVB representative to discuss project financing and the meeting(s) culminated in several different loans.
The first loan ($150,000) is evidenced by a September 13, 1996 promissory note. The second loan ($1,294,000) by a July 31, 1997 note. The third loan ($100,000) by a November 17, 1997 note.[2] As security for these loans, appellant gave OVB a mortgage on several parcels of real estate which presumably encompass the development project area. As additional collateral, appellant also executed a security agreement that gave OVB a security interest in certain personal property.
Apparently, appellant's project and the parties' financial relationship somehow went awry. On December 31, 1998, appellant filed suit against OVB and set forth a variety of claims including breach of contract, misrepresentation, breach of fiduciary duty and tortious interference with contractual relations.[3] He asked for $10 million in compensatory damages and $50 million in punitive damages. The bank denied liability and filed a counterclaim that alleged default on the promissory notes and a breach of the mortgage and security agreement.[4] The bank asked for (1) judgment on the balance due under the notes, (2) foreclosure of the mortgage and security agreement, and (3) damages to compensate it for collection costs and attorneys fees.[5] Appellant denied liability on the counterclaim and asserted a wide variety of defenses.
On July 29, 1999, the trial court granted OVB's Civ.R. 12(C) motion and dismissed appellant's complaint in its entirety. The matter thus proceeded solely on OVB's counterclaim(s). Shortly thereafter, appellant filed a chapter 11 reorganization petition in the United States Bankruptcy Court for the Southern District of Ohio. This halted the foreclosure action for several months until December of 1999 when the bank obtained relief from the automatic stay provisions.[6]
On July 26, 2000, the bank then filed a summary judgment motion with an attached affidavit from E. Richard Mahan, OVB Executive Vice President. Mahan attested that he had personal knowledge of these loans and that the exhibits submitted with the bank's (amended) counterclaim were true and correct copies of original loan documentation, that all three loans were in default and that appellant owed the following amounts:
 "Herald owes to OVB on Note No. 1 the principal balance of $854,778.20 plus interest in the sum of $234,902.57 through July 21, 2000, which said interest is presently accruing at the rate of $391.77 per diem, plus accrued late charges of $54,732.49; that Herald owes to OVB on Note No. 2 the principal balance of $100,000.00 plus interest in the sum of $27,861.82 through July 21, 2000, which said interest is presently accruing at the rate of $45.14 per diem, plus accrued late charges of $5,000.00; and that Herald owes to OVB on Note No. 3 the principal balance of $57,263.33 plus interest in the sum of $12,970.98 through April 21, 2000, which said interest is presently accruing at the rate of $24.26 per diem, plus accrued late charges of $1,224.72, plus advancements and disbursements and its costs expended herein, including attorney fees."
The affiant further attested that the bank had accrued the sum of $59,249.79 "as costs of collection, which includes a reasonable attorney fee." Given this evidence, the bank concluded that it was entitled to judgment for those amounts as well as the foreclosure of its security.
Appellant's memorandum in opposition argued that he made "adequate protection payments" to OVB during the course of the bankruptcy proceedings and that those amounts "have not been credited against the amounts demanded by OVB." He submitted his own affidavit in support of that argument as follows:
 "2. Since the commencement of the above-captioned action and during the pendency of my Chapter 11 bankruptcy proceedings, I have made adequate protection payments to The Ohio Valley Bank, which amounts have not been credited to the balances on the Notes at issue in this matter.
 3. Since the commencement of the above-captioned action and during the pendency of my Chapter 11 bankruptcy proceedings, I have sold a number of parcels of real estate in the Appletree Estates subdivision, the proceeds of which were paid to the Ohio Valley Bank, and which amounts have not been credited to the balances on the Notes at issue in this matter.
 4. The amounts due and owing as alleged by the Ohio Valley Bank are inaccurate in that they do not reflect payments made to it by me.
 5. The amounts due and owing alleged by the Ohio Valley Bank are inaccurate in that the interest calculations are inaccurate."
Thus, appellant asserted that genuine issues of material fact existed as to the correct balances owed on the three notes and that the bank's motion for summary judgment should be denied. The bank replied with another Mahan affidavit that stated that appellant's "additional payments" had, in fact, been credited to his account and that the balances reflected in the bank's initial affidavit were correct.
The trial court ultimately ruled in the bank's favor and directed it to prepare an appropriate judgment entry. On November 16, 2000, the court (1) entered judgment in favor of OVB on each of the three notes in the amounts that it had requested, (2) determined that the mortgage and security agreements were valid and subsisting liens, and (3) ordered that all liens in the premises be marshaled, that an order of sale be issued, that the Meigs County Sheriff sell the real estate and the proceeds be applied to the judgments rendered against appellant. This appeal followed.[7]
 I
Appellant argues in his first assignment of error that the trial court erred in granting the bank's motion for summary judgment. Specifically, appellant contends that genuine issues of material fact exist as to the precise amounts owed on the promissory notes. We disagree.
Our analysis begins from the premise that summary judgments are reviewed de novo. See Broadnax v. Greene Credit Service (1997),118 Ohio App.3d 881, 887, 694 N.E.2d 167, 171; Coventry Twp. v. Ecker
(1995), 101 Ohio App.3d 38, 41, 654 N.E.2d 1327, 1329; Maust v. Bank OneColumbus, N.A. (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765, 768. That is to say we afford no deference to the trial court's decision, see Hicksv. Leffler (1997), 119 Ohio App.3d 424, 427, 695 N.E.2d 777, 779; Dillonv. Med. Ctr. Hosp.(1993), 98 Ohio App.3d 510, 514-515, 648 N.E.2d 1375,1378; Morehead v. Conley (1991), 75 Ohio App.3d 409, 411-412,599 N.E.2d 786, 788, and conduct our independent review to determine if summary judgment was appropriate. Woods v. Dutta (1997),119 Ohio App.3d 228, 233-234, 695 N.E.2d 18, 21; Phillips v. Rayburn
(1996), 113 Ohio App.3d 374, 377, 680 N.E.2d 1279, 1281; McGee v.Goodyear Atomic Corp. (1995), 103 Ohio App.3d 236, 241, 659 N.E.2d 317,320.
Summary judgment under Civ.R. 56(C) is appropriate when the movants demonstrate that (1) no genuine issues of material fact exist, (2) they are entitled to judgment in their favor as a matter of law, and (3) after the evidence is construed most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party. Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201, 204; Mootispaw v.Eckstein (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197, 1199; Harlessv. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46,47-48. The party moving for summary judgment bears the initial burden to demonstrate that no genuine issue of material fact exist and that they are entitled to judgment in their favor as a matter of law. See Vahilav. Hall (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164, 1170; Dresherv. Burt (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 274; Mitseff v.Wheeler (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801. Once that burden is met, the onus shifts to the non-moving party to provide evidentiary materials in rebuttal. See Trout v. Parker (1991),72 Ohio App.3d 720, 723, 595 N.E.2d 1015, 1017; Campco Distributors,Inc. v. Fries (1987), 42 Ohio App.3d 200, 201, 537 N.E.2d 661, 662-663;Whiteleather v. Yosowitz (1983), 10 Ohio App.3d 272, 275, 461 N.E.2d 1331,1335-1336. With these principles in mind, we turn our attention to the proceedings below.
There is no question that appellant defaulted on the promissory notes. Thus, the issue is the amount due and owing on the notes. To that end, OVB submitted its Executive Vice President's detailed affidavit that set out the amounts due on the notes. This sufficiently carried the bank's initial burden under Civ.R. 56 and the burden then shifted to appellant to provide rebuttal evidentiary materials.
Appellant's affidavit asserts that the amounts the bank claims as due on the notes were inaccurate and did not account for various payments that he made during the bankruptcy proceeding. Appellant also claims that the interest calculations are incorrect. We note, however, that appellant provided nothing to show that he had personal knowledge of these matters.See Civ.R. 56(E). Appellant is not a bank employee and he would not ordinarily be in a position to have personal knowledge of the bank's accounting practices or his accounts in particular. Moreover, appellant's affidavit incorporated no other evidentiary materials (e.g. check stubs, accounting records, etc.) to support his position and to show why the bank's calculations are inaccurate and offered no alternative to the amounts OVB set out in its motion. If the bank's calculations are inaccurate, as appellant contends, it is incumbent on appellant to highlight those inaccuracies and propose his own alternative figures. The choice between two such alternative figures may have caused the trial court to conclude that a genuine issue of fact does indeed exist. Appellant failed to do so, however, and we conclude that his affidavit is merely a conclusory and unsupported attempt to forestall summary judgment.
We recognize that the trial court should neither weigh the evidence nor assess affidavit credibility when it determines whether summary judgment is appropriate. See Steele v. Auburn Vocational School Dist. (1994),104 Ohio App.3d 204, 206-207, 661 N.E.2d 767, 769; Mayfield v. Boy Scoutsof Am. (1994), 95 Ohio App.3d 655, 659-660, 643 N.E.2d 565, 568-569;Shaheen v. Boston Mills Ski Resort, Inc. (1992), 85 Ohio App.3d 285,288, 619 N.E.2d 1037, 1039. A trial court must, however, assess whether evidentiary materials sufficiently raise a genuine issue of material fact to negate a summary judgment request. This process is best explained as follows:
 "[A] `genuine issue' exists when the evidence presents `a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.' . . . In order for the evidence to be in `sufficient disagreement,' the court must `ask [itself] * * * whether a fair minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence upon which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict — whether there is evidence upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." (Emphasis added.)
Fink, Greenbaum Wilson, Guide to the Ohio Rules of Civil Procedure (2000 Ed.) 923, § 56-10 citing Anderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505; also see Carsey v.Alexander Cemetery, Inc. (Mar. 29, 2001), Athens App. No. 00CA028, unreported; Harrel v. Solt (Dec. 27, 2000), Pickaway App. No. 00CA027, unreported.
In order to meet its burden under Civ.R. 56(C), the non-moving party need not try its case but must produce more than a proverbial "scintilla of evidence." Carsey, supra; Williams v. 312 Walnut Ltd. Partnership
(Dec. 31, 1996), Hamilton C-960368, unreported; Ridgill v. Little ForestMed. Ctr. (Jun. 28, 2000), Summit App. No. 1901, unreported; Damon's,Inc. v. Burman (Dec. 21, 1999), Franklin App. No. 99AP-10, unreported. Conclusory statements in an affidavit are not evidence for purposes of summary judgment and do not raise genuine issues of material fact.Salisbury v. Bevens (Jun. 26, 1996), Pike App. No. 95CA563, unreported;Besser v. Bryan (Sep. 22, 1992), Ross App. No. 1828, unreported.
In the case sub judice, appellant's affidavit makes only conclusory statements that the bank inaccurately calculated the amounts owed on the promissory notes. We agree with the trial court that appellant provided no evidence that raises a genuine issue of material fact.
Accordingly, based upon the foregoing reasons, we find that appellant's first assignment of error is without merit and is hereby overruled.
 II
Appellant argues in his second assignment of error that the trial court erred in awarding OVB attorney fees without first determining that those fees were reasonable. We decline to address that argument, however, as the trial court has not definitively ordered an amount of attorney fees in its foreclosure judgment. Although the bank asked for $59,249.79 in its summary judgment motion, no figure was included in the judgment entry. It is axiomatic that courts speak only through their journal entries. Gaskin v. Shiplevy (1996), 76 Ohio St.3d 380, 382,667 N.E.2d 1194, 1196; State v. King (1994), 70 Ohio St.3d 158, 162,637 N.E.2d 903, 906; Schenley v. Kauth (1953), 160 Ohio St. 109,113 N.E.2d 625, at paragraph two of the syllabus. Thus, we will not review this issue until the court makes a definitive attorney fee award.
We also note that further proceedings must be conducted in the causesub judice. Presumably, the bank's attorney fee obligation will increase as it proceeds through the sheriff's sale and confirmation process. The trial court may then make a final attorney fee award when this matter is completed. At that time, the attorney fee award could be properly reviewed. Thus, for these reasons, we hereby overrule appellant's second assignment of error.[8]
Having reviewed both assignments of error, and finding merit in neither of them, we hereby affirm the trial court's judgment.
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
 JUDGMENT ENTRY
It is ordered that a special mandate issue out of this Court directing the Meigs County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J. Evans, J.: Concur in Judgment Opinion.
[1] This project is also referred to in the record as "Apple Creek Estates."
[2] All three notes were payable on demand and bore interest rates based on the prime rate. On January 27, 1998, the parties entered into "loan modification agreements" reducing the rate on all three loans.
[3] Many of these claims stem from appellant's allegations that he had an "oral" line of credit with OVB which the bank refused to honor.
[4] The bank's initial counterclaim alleged default on the 1997 notes, and asked only that the real estate mortgage be foreclosed. The bank's amended answer alleged default on the 1996 note and sought foreclosure of the security agreement in addition to the mortgage.
[5] All three notes contained provisions which specified that in the event of default and subsequent collection actions, the bank could recover its "costs of collection" and "attorneys fees."
[6] We note that there are several references in the record to the bankruptcy court's entry granting such relief but we have not found a copy of that judgment in our own review of the original papers. Nevertheless, because neither party contests the issue, we will assume that relief from the automatic stay was granted.
[7] Although a Sheriff's sale must be conducted and a confirmation entry must be filed to distribute the sale proceeds, the foreclosure order does constitute a final appealable order. See e.g. Society NationalBank v. Repasky (Sep. 21, 2000), Mahoning App. No. 99CA193, unreported;BCGS, L.L.C. v. Raab (Jul. 17, 1998), Lake App. No. 98-L-041, unreported; Federal Home Loan Mtg. Corp. v. McDaniels (Aug. 2, 1995), Summit App. No. 17142, unreported. Thus, we have jurisdiction to review the case. See R.C. 2501.02; Section 3(B)(2), Article IV of the Ohio Constitution.
[8] We parenthetically note that when contracts carry a stipulation for the payment of attorney fees upon default, without specifying an amount therein, the general rule is that the fee collected must be "reasonable."See 17A American Jurisprudence2d (1991) 516-517, Contracts, § 503. Of course, this assumes that the attorney fee provision payment is, in fact, enforceable to begin with. We note that considerable authority exists for the proposition that it is not, see e.g. Worth v. Aetna Cas. Sur. Co. (1987), 32 Ohio St.3d 238, 242, 513 N.E.2d 253, 257, Miller v.Kyle (1911), 85 Ohio St.3d 186, 97 N.E. 372, at paragraph one of the syllabus. Other authority stands for the proposition that it may be enforceable. See e.g. First Capital Corp. v. G I Industries, Inc. (1999), 131 Ohio App.3d 106, 114, 721 N.E.2d 1084, 1090. This may be an issue that the parties should address before the trial court makes any final attorney fee award.