SANTHO et al., Appellants,

v.

BOY SCOUTS OF AMERICA et al., Appellees.

[Cite as Santho v. Boy Scouts of Am., 168 Ohio App.3d 27, 2006-Ohio-3656.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 05AP–341.

Decided July 18, 2006.

---

28

30

Kemp, Schaeffer, Rowe and Lardiere Co., L.P.A., Steven D. Rowe and Darren A. McNair, for appellants.

Vorys, Sater, Seymour and Pease L.L.P., and Theodore P. Mattis, for appellees Boy Scouts of America, Simon Kenton Council, and Prince of Peace Lutheran Church.

Reminger & Reminger, Paul Michael LaFayette and Michael J. Valentine, for appellee Central Ohio Ice Rink, Inc./Chiller Ice Rink.

Bale, Begin & Associates, Ltd., David G. Bale and Christopher R. Cave, for appellee Margaret Bennett.

TRAVIS, Judge.

{¶ 1} Lynn and Rick Santho, on behalf of their son, Jamie Santho, appeal from the summary judgment entered by the Franklin County Court of Common Pleas on July 8, 2004, in favor of Boy Scouts of America, Simon Kenton Council, Prince of Peace Lutheran Church, and the Chiller Ice Rink ("Chiller"), and a directed verdict entered by the same court on March 2, 2005, in favor of Margaret Bennett.

{¶ 2} Boy Scouts of America ("BSA") issued a charter to the Simon Kenton Council ("SKC"), which in turn issued a charter to the Prince of Peace Lutheran Church ("POPLC") for the purpose of sponsoring Pack 210. The pack committee, which was made up of parents and organized by POPLC, supervised all

everyday operations and the planning of activities of Pack 210. Jamie Santho, age nine, was a Cub Scout in Pack 210. His Cub Scout Master was Fred Bigney. Margaret Bennett was a den leader in the troop.

{¶ 3} In addition to her role as a den leader, Bennett also had significant ice skating experience. Prior to her employment with the Chiller, Bennett was employed by the Ice Skating Institute of America as program and educational coordinator. Following that, she taught ice skating at Ohio State University. At the time of the incident giving rise to this action, Bennett was a salaried employee of the Chiller, an ice rink located in Dublin, Ohio, and run by Central Ohio Ice Rinks, Inc. At the Chiller, Bennett served as the Skating School Director. Her duties included organizing class schedules and training instructors. On occasion, she also taught hourly lessons for a fee.

{¶ 4} On November 13, 1994, Bennett organized a "family fun skate" at the Chiller for the members and parents of Pack 210. She filled out the "Agreement for Ice Rental" and provided information and fliers to the members at their pack meeting.

{¶ 5} Jamie Santho, his father, and his siblings attended the fun skate. Jamie was an avid skater, participated in hockey leagues, and took hockey lessons at the Chiller. Jamie's father was a volunteer hockey coach at the Chiller. On the night of the event, Jamie's father permitted Jamie to skate without his hockey helmet. Shortly after arriving, Jamie was racing with his friend, Colin Innes, from board to board. When Jamie looked over his shoulder to see where Colin was, he crashed into the boards and suffered a skull fracture and concussion. Appellants allege that Bennett had organized the relay race against the rules of the Chiller.

{¶ 6} Appellants filed suit against BSA, POPLC, SKC, the Chiller, and Bennett in 1997. Appellants dismissed their suit pursuant to Civ.R. 41 and refiled on October 1, 2002, seeking recovery for claims of negligence, reckless/intentional conduct, respondeat superior, and loss of consortium. The trial court granted summary judgment to all appellees on the claim for negligence, under the doctrine of primary assumption of the risk. The trial court also granted summary judgment to BSA, SKC, and POPLC for the claim of recklessness, on the grounds that Bennett was not an agent of the organizations and, therefore, no liability could be imputed. The Chiller also was granted summary judgment on plaintiffs' recklessness claim. The trial court denied Bennett summary judgment on the recklessness claim, and the issue proceeded to trial.

{¶ 7} The matter was tried on February 28, March 1, and March 2, 2005. At the close of arguments on March 2, the trial court granted Bennett's motion for a directed verdict.

{¶ 8} Appellants timely appealed and assert four assignments of error:

I. The trial court committed reversible error by granting defendant Margaret Bennett a directed verdict after the close of plaintiffs' case. Plaintiffs presented sufficient evidence to permit the jury to consider the issue of whether defendant Bennett's conduct was reckless.

II. The trial court committed reversible error by granting summary judgment on plaintiffs' recklessness claims against defendants Boy Scouts of America, Simon Kenton Council, Prince of Peace Lutheran Church and Central Ohio Ice Rinks, Inc./The Chiller because it erroneously held that Margaret Bennett was not an agent of any of the aforementioned defendants, but assuming arguendo she was, the court erroneously held further that principals are not vicariously liabile [sic] for the reckless acts of its agents.

III. The trial court committed reversible error by granting summary judgment on plaintiff's [sic] negligence claims against defendants Bennett, Boy Scouts of America, Simon Kenton Council, Prince of Peace Lutheran Church, and Central Ohio Ice Rinks, Inc./The Chiller because the court erroneously relied on *Gentry v. Craycraft* (2004), 101 Ohio St.3d 141 [802 N.E.2d 1116], and misapplied the doctrine of primary assumption of the risk to the facts in this case.

IV. *Gentry v. Craycraft* (2004) 101 Ohio St.3d 141 [802 N.E.2d 1116] [sic] is unconstitutional because it deprives citizens of the state of Ohio, and in this case plaintiffs, rights under Article I, Sections 5 and 16 of the Ohio Constitution.

{¶ 9} Appellate review of motions for summary judgment is de novo. The moving party bears the burden of proving that (1) no genuine issues of material fact exist, (2) the moving party is entitled to summary judgment as a matter of law, and (3) reasonable minds can come to only one conclusion, which is adverse to the nonmoving party. Civ.R. 56. When the evidence supports a motion for summary judgment, the nonmoving party must present specific facts beyond the pleadings to show that a genuine issue of material fact exists and, therefore, the moving party is not entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264.

{¶ 10} Appellate review of directed verdicts is also de novo. Under Civ.R. 50(A)(1), a motion for directed verdict may be made upon the opening statement of the opponent, at the close of opponent's evidence, or at the close of all evidence. If, after construing the evidence in a light most favorable to the nonmoving party, the trial court finds that reasonable minds can come to but one conclusion, which is adverse to the nonmoving party, the trial court may direct a verdict in favor of the moving party. Civ.R. 50(A)(4). When considering the evidence, the trial court may not evaluate the weight of the evidence or the credibility of the witnesses. Only the relevancy of the testimony may be

considered. *Gibbs v. Village of Girard* (1913), 88 Ohio St. 34, 102 N.E. 299. A directed verdict presents a question of law, not one of fact. *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 58 O.O.2d 424, 280 N.E.2d 896. Therefore, the sole determination for the court is whether the evidence presented is sufficient to present the case to the jury. *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 23 O.O.3d 115, 430 N.E.2d 935.

{¶ 11} Assignments of error one and three contest the trial court's determination on summary judgment that the doctrine of primary assumption of the risk applied to the facts of this case and its subsequent grant of a directed verdict in Bennett's favor on the sole remaining issue of recklessness, an exception to primary assumption of the risk. Due to the interrelated nature of these two issues, we consider them first.

{¶ 12} In their third assignment of error, appellants object to the trial court's application of primary assumption of the risk to this case. Under the doctrine of primary assumption of the risk, an individual injured in the course of a recreational activity is presumed to have assumed the ordinary risks of that activity unless it can be shown that another actor acted recklessly or intentionally in causing the injury. *Marchetti v. Kalish* (1990), 53 Ohio St.3d 95, 559 N.E.2d 699; *Gentry v. Craycraft,* 101 Ohio St.3d 141, 2004-Ohio-379, 802 N.E.2d 1116. The doctrine serves to remove liability for negligence under these circumstances. The trial court applied the three-part test for primary assumption of the risk in sporting events set forth in *Gallagher v. Cleveland Browns Football Co., Inc.* (1994), 93 Ohio App.3d 449, 638 N.E.2d 1082, reversed on other grounds, 74 Ohio St.3d 427, 659 N.E.2d 1232. The test requires that (1) the danger is ordinary to the game, (2) it is common knowledge that the danger exists, and (3) the injury occurs as a result of the danger during the course of the game.

{¶ 13} It is foreseeable that any time an individual, regardless of skill, steps onto ice, they risk falling or coming into contact with the barriers that set the perimeter of the skating surface. It is foreseeable that any time an individual falls on ice, or strikes the perimeter boards, they risk injury. Therefore, every time Jamie Santho went onto the ice, either to play hockey or to participate in any other activity, he assumed the risk of falling or running into the perimeter boards and injuring himself. There is no question that Jamie was participating in a recreational activity at the time he was injured. Falling is an ordinary danger of ice skating. Colliding with the perimeter boards is an ordinary danger of ice-rink skating. It was during the course of ice skating and participating in the relay race that Jamie was injured. The appellant's age and ability to appreciate the danger involved is immaterial to the doctrine of primary assumption of the risk. Only the conduct of the appellee is relevant to recovery. *Gentry,* 101 Ohio St.3d 141, 2004-Ohio-379, 802 N.E.2d 1116.

{¶ 14} Appellants further argue that the trial court erred in applying the doctrine of primary assumption of the risk to the facts herein because Bennett was not a participant in the relay race.[1] They argue that case law has applied the doctrine only in circumstances in which the defendant is another participant. However, a recreation provider ordinarily owes no duty to a participant or spectator of an active sport to eliminate the risks inherent in the sport. *Gallagher*, 93 Ohio App.3d 449, 638 N.E.2d 1082. Here, Bennett organized the fun skate for Pack 210, as she had on several previous occasions. That was her main project for the pack. Therefore, Bennett qualifies as a recreation provider. Bennett is relieved of liability under the doctrine of primary assumption of the risk even though she was a nonparticipant in the relay race. Based upon the case law and the facts of this case, we find that the trial court properly applied the doctrine of primary assumption of the risk and properly granted summary judgment in favor of appellees on appellants' negligence claim. Appellants' third assignment of error is not well taken and is overruled.

{¶ 15} Under the first assignment of error, we must determine whether sufficient evidence was presented at trial to raise a jury question of whether Bennett acted recklessly when she organized the fun skate relay race. Appellants argue that the evidence presented on motion for summary judgment and the evidence presented at trial was substantially the same. Appellants state that if the trial court found a genuine issue of material fact on the issue of recklessness when ruling on the motion for summary judgment, that same evidence was sufficient to present a question for the jury on the same issue at trial. Appellants reason that the trial court could not be correct in both instances.

{¶ 16} Motions for summary judgment and for directed verdict address the same issue, albeit at different times during the process of litigation. Whether in summary-judgment proceedings or during trial, the ultimate issue under either Civ.R. 56 or 50 is whether the evidence is sufficient to present an issue for determination by the trier of fact. Summary judgment raises this question prior to trial; directed verdict raises the question during trial. A court does not consider the weight of the evidence or credibility of the witnesses in ruling on either a motion for summary judgment under Civ.R. 56, or in ruling on a motion for directed verdict under Civ.R. 50. *Turner v. Turner* (1993), 67 Ohio

---

1. The Santhoses argue that negligent supervision should apply instead. For a nonparticipant to be found liable in a recreational activity, it must be found that the nonparticipant either (1) allowed an activity to take place absent any management or (2) allowed a participant with a known propensity for violence to engage in the activity. *Rodriguez v. O.C.C.H.A.* (2000), Mahoning App. No. 99 C.A. 30, 2000 WL 1486449; *Kline v. OID Assoc., Inc.* (1992), 80 Ohio App.3d 393, 609 N.E.2d 564. Bennett managed the first race, and the evidence indicates that Richard Pretzloff supervised the second race. Furthermore, none of the participants exhibited violent behavior. Therefore, negligent supervision does not apply in this case.

St.3d 337, 617 N.E.2d 1123; *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 21 O.O.3d 177, 423 N.E.2d 467.[2]  The question is whether there is sufficient evidence to create a genuine issue for a jury to decide.

{¶ 17} When a motion for summary judgment is denied because the evidence demonstrates that a jury issue exists, and that same evidence is later presented at trial, logically, it would appear that the same result should obtain and a motion for directed verdict should be overruled.[3]  However, the result of the first assignment of error is not dictated by a pretrial decision on summary judgment or by whether the same or additional evidence was available at trial. Instead, the ultimate issue presented by the first assignment of error is whether the trial court was correct in granting a directed verdict at the close of appellants' case.  As discussed from the evidence presented at trial, we find that reasonable minds could come to but one conclusion upon the evidence and that conclusion is that Bennett did not act recklessly during the fun skate relay race.

{¶ 18} Appellants' claim that Bennett acted recklessly arises from the relay race itself and what appellants feel was the violation of a posted rule that prohibited racing.  Based on the evidence presented in the proceedings for summary judgment, the trial court determined that genuine issues of material fact existed as to whether Bennett was reckless in organizing the relay race and in permitting Jamie to participate without a helmet.[4]  The trial court determined that there was a genuine issue of whether Bennett acted recklessly based primarily upon two factors:  the sign at the ice rink that prohibited racing and the lack of helmets for the participants.

{¶ 19} Ohio has adopted the definition of recklessness contained in the Restatement of the Law 2d, Torts (1965), Section 500.  *Marchetti*, 53 Ohio St.3d at 96, 559 N.E.2d 699, fn. 2:

---

2.  Appellants point out that at trial, during discussions of the court and counsel on the question of directing a verdict, the court commented on the credibility of the testimony of a witness and noted reactions of the faces of the jurors during testimony.  However, we are satisfied that when the comments are viewed in the context of the discussion between court and counsel, the comments were not a factor in the determination to grant a directed verdict.

3.  Compare *Dupler v. Mansfield Journal Co., Inc.* (1980), 64 Ohio St.2d 116 at 126, 18 O.O.3d 354, 413 N.E.2d 1187, fn. 8 (Brown, J., concurring).  "The same quantum of evidence can require that a motion for summary judgment be denied under Civ.R. 56(C) because there exists 'a genuine issue as to * * * (a) material fact,' and that a motion for directed verdict under Civ.R. 50(A)(4) be granted because 'reasonable minds could come to but one conclusion upon the evidence.' "

4.  While the evidence on whether Bennett organized the relay race was in conflict, we must construe that evidence in the light most favorable to appellants and therefore assume that Bennett did organize the race.

> The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

Furthermore, the Restatement notes that simply violating a statute or rule is not enough to constitute a reckless disregard for safety. The violation of the rule must (1) be intentional and (2) be recognized as resulting in a significantly higher risk that serious harm will occur. Id. at Section 500(e). A plaintiff cannot recover from any injuries that stemmed from "conduct that is a foreseeable, customary part" of the activity in which the plaintiff was injured. *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 104, 559 N.E.2d 705.

{¶ 20} Turning to the facts of this case, the question presented is whether Bennett was reckless in organizing the relay race in which Jamie was injured. More specifically, did Jamie's injury stem from conduct—the relay race—that was a foreseeable part of the activity? We have already determined that Jamie assumed the risk of falling or coming into contact with the perimeter boards and injuring himself when he began skating and again when he voluntarily took part in the relay race. To be considered reckless, Bennett's conduct in organizing the fun skate relay race had to create an unreasonable risk of physical harm to another—a risk substantially greater than that which is necessary to make that conduct negligent.

{¶ 21} From trial testimony and evidence, we know that there is a sign posted in the Chiller that prohibits racing. Warren Weber, the building supervisor at the time of Jamie's accident, stated that the "no racing" rule applied to both public and private skating events. However, Weber also testified that the rule was relaxed during private parties. He further stated that even if the private party did not have rink guards, "[w]e would never knowingly allow an unsafe condition. I think our employees knew what unsafe and safe were or were not and would not allow an unsafe condition to go on." Weber said that if he saw individuals racing from board to board, he would take into account the ability of the skaters in determining whether the activity was safe enough to continue. Weber testified that at the time of the fun skate, there were other people working at the Chiller, even though they were not working as rink guards for the fun skate. There was no evidence that anyone on duty at the time of the accident thought the activities were unsafe. Indeed, Richard Pretzloff, a Chiller employee and father of one of the Cub Scouts attending the fun skate, was present during the relay races. Pretzloff testified that he allowed his own son to participate in the relay race.

{¶ 22} Additionally, it is undisputed that Bennett took certain precautions when she initiated the relay race. Bennett organized the activity and divided up the ice because the more skilled skaters were being disruptive and posed a threat of harm to parents and children who were not as proficient at ice skating. Furthermore, only those of certain skill levels were allowed to participate in the races. Bennett set the rules and supervised the first race. According to her testimony, there was no evidence of dangerous activity. After the first race, she left the immediate area and left Mr. Pretzloff in charge of the second race. Even if events in the second race increased the risk of harm, there is no evidence that Bennett was aware of them or that she allowed the races to continue despite some increased risk to the participants. In sum, we cannot say that Bennett's conduct in organizing the relay race was in reckless disregard of the safety of another.

{¶ 23} Appellants further argue that Bennett was reckless in not requiring Jamie to wear a helmet. No evidence was submitted to support this claim. Jamie's father testified that he allowed his son to participate in the recreational skate without a helmet. Other testimony presented at trial showed that no fun-skate participants were wearing helmets and that helmets are typically worn only while playing hockey. Finally, there was evidence that requiring helmets is not an industry standard.

{¶ 24} We find that as a matter of law, the evidence does not support a claim of recklessness, regardless of how generously it may be viewed in favor of appellants. Therefore, the trial court did not err in granting a directed verdict for Bennett on the issue of recklessness. Appellants' first assignment of error is not well taken and is overruled.

{¶ 25} Under their second assignment of error, appellants contest the trial court's determination on summary judgment that BSA, SKC, POPLC, and the Chiller were not vicariously liable for Bennett's reckless acts because she was not an agent of those organizations. Because we have found as a matter of law that Bennett did not act recklessly, this argument has been rendered moot.

{¶ 26} Even if the evidence supported a finding that Bennett was reckless, under the facts of this case, BSA, SKC, and POPLC were not vicariously liable because the evidence supports the trial court's determination that Bennett was not an agent of those organizations. Appellants rely on *Mayfield v. Boy Scouts of Am.* (1994), 95 Ohio App.3d 655, 643 N.E.2d 565, a case involving injuries to a scout while on a camping trip under the direction of a Boy Scout volunteer. In *Mayfield,* the campout was at a facility controlled and operated by the Boy Scouts and located on land owned by the Boy Scouts. The Boy Scouts required all volunteers who were in charge of campouts to purchase and wear official Boy Scout uniforms, accessories, and supplies and to follow Boy Scout

policies, procedures, rules, and regulations. Additionally, in *Mayfield,* there was evidence that the Boy Scouts retained a degree of direction and control over the volunteer who supervised the campout, and Boy Scout insurance policies covered the acts of the volunteer. Finally, in that case, there was evidence that the plaintiffs relied upon the affirmative acts and representations of the Boy Scouts, which led the plaintiffs to believe that the volunteer was acting as an agent of the Boy Scouts.

{¶ 27} In contrast, there is no evidence to suggest that Bennett was acting as the agent of the BSA, SKC, or POPLC. Bennett organized the family fun skate outside the framework of the BSA organization. The fun skate was held at a facility completely independent of the BSA. There is no evidence that the BSA, SKC, or POPLC were aware of or had any control over the conduct of either Bennett or the fun skate. There is no evidence that Bennett acted as an agent of the Boy Scouts or any of the other organizations. We find *Mayfield* to be distinguishable on its facts.

{¶ 28} Appellants also argue that the Chiller is liable for Bennett's actions under the doctrine of respondeat superior. Appellants contend that because Bennett was an employee of the Chiller, the Chiller was liable for her actions committed during the course and scope of her employment with the Chiller. However, at the time of the accident, Bennett was not being paid by the Chiller. Actions within the "course of employment" are, by definition:

> Events that occur or circumstances that exist as a part of one's employment; esp., the time during which an employee furthers an employer's goals through employer-mandated directives.

*Black's Law Dictionary* (7th Ed.1999) 356. Bennett's employment duties as a skating-school director at the Chiller consisted of training instructors and scheduling. She also gave private skating lessons. However, all of these activities were directed by the Chiller, by whom she was paid. At the time of the fun skate, Bennett was not being paid by the Chiller. She was not acting as a rink guard. According to the evidence presented by the trial court, rink guards wore distinctive clothing that identified them in that capacity. There is no evidence that Bennett was acting as, or held herself out as, a rink guard for the Chiller. Instead, the evidence supports only that Bennett was acting as a den mother of Pack 210 and organized the fun skate for Pack 210. She was there as a volunteer for Pack 210 and as a parent. Therefore, the trial court did not err in finding that there was insufficient evidence to show that Bennett was an agent of the Chiller and acting on behalf of the Chiller at the time Jamie was injured.[5] Appellants' second assignment of error is not well taken and is overruled.

---

5. Weber indicated that anywhere from four to ten people could have been working during the fun skate. The fun skate was not held as an after-hours event. If it were, there would be

{¶ 29} In their fourth assignment of error, appellants contend that *Gentry*, 101 Ohio St.3d 141, 2004-Ohio-379, 802 N.E.2d 1116, is a violation of Sections 5 and 16, Article I of the Ohio Constitution. Appellants assert that by relying on *Gentry*, the trial court violated their right to trial by jury and a remedy by due course of law. *Gentry* is a decision of the Supreme Court of Ohio. It is not within our authority to declare that a determination of a superior court is invalid.

{¶ 30} Furthermore, appellants failed to raise this issue at the trial court. Therefore, the issue has been waived for purposes of appeal. "It is a general rule that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *State v. Childs* (1968), 14 Ohio St.2d 56, 61, 43 O.O.2d 119, 236 N.E.2d 545, citing *State v. Glaros* (1960), 170 Ohio St. 471, 11 O.O.2d 215, 166 N.E.2d 379, paragraph one of the syllabus. Appellants' fourth assignment of error is overruled.

{¶ 31} Based upon the foregoing, appellants' four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

Judgment affirmed.

BROWN and SADLER, JJ., concur.

_____

some argument as to whether Bennett was an agent of the Chiller by virtue of being the only employee of the Chiller in the building, aside from Richard Pretzloff. However, this was not the case.