OPINION
{¶ 1} This is an appeal from a directed verdict granted in favor of the defendants by the Franklin County Court of Common Pleas. Appellants, Ronald L. and Jeannine Kester, brought this medical malpractice action against Arlo Brakel, M.D., Neurosurgical and Spine Surgeons of Central Ohio, Inc., Mt. Carmel East Hospital and St. Ann's Hospital in a complaint filed January 24, 2003.[1] The complaint was based on the alleged medical negligence of Dr. Brakel in treating Mr. Kester.
 {¶ 2} Appellant, Ronald L. Kester, sought medical treatment from appellee, Dr. Brakel, on May 10, 2001. Mr. Kester complained of left sciatic pain and provided Dr. Brakel with a written history of problems with his back that began when he was in elementary school. Dr. Brakel recommended that Mr. Kester have a myelogram. Mr. Kester next saw Dr. Brakel on June 19, 2001, following the myelogram and discussed the possibility of surgery and the attendant risks of infection and nerve injury.
 {¶ 3} On July 11, 2001, Mr. Kester underwent spinal surgery. No problems were noted during or after the surgery. Antibiotics were ordered and given to Mr. Kester both before and after the procedure as standard practice. A "Ray" cage was inserted at the L5-S1 portion of the spine. There was no evidence of a spinal fluid leak.
 {¶ 4} On July 20, 2001, Mr. Kester returned to Dr. Brakel for a post-operative visit. At that time, he complained of pain, but his body temperature was not elevated and there was no evidence of infection. Mr. Kester continued to complain of pain and an MRI exam was performed on August 13, 2001. Blood tests conducted on August 15, 2001 gave no evidence of infection. A CT scan showed an accumulation of fluid near the area of surgery. The fluid was cultured. No infection was found.
 {¶ 5} Because Mr. Kester continued to complain of pain, a second surgery was performed on August 27, 2001. The original "Ray" cage was replaced with one of a larger size. Antibiotics were given before and after the surgery. A swab of the surgical wound showed no evidence of infection.
 {¶ 6} Mr. Kester next saw Dr. Brakel on September 7, 2001 for a post-surgical follow-up visit. The surgical wound showed some fluid drainage. However, no redness was noted at the site. He saw Dr. Brakel again on September 10, 2001, and complained of further drainage and fever over the weekend. Dr. Brakel directed Mr. Kester to go to the hospital where he placed a lumbar drain at the surgical site. Dr. Brakel testified that the procedures he employed and his care both before and after surgeries were not the cause of any harm to Mr. Kester.
 {¶ 7} During trial, Mr. Kester related that he had two surgeries performed by Bradley Mullin, M.D., subsequent to the surgeries performed by Dr. Brakel. The first surgery performed by Dr. Mullin took place on October 22, 2001. The second was on July 30, 2002. Dr. Mullin did not testify in the case.
 {¶ 8} Appellants offered the testimony of Dr. Aldo Rosenblat, a neurosurgeon that appellants had contacted as a potential expert witness. Appellants also called Dr. Steven Katz, M.D., an ophthalmologist who examined and treated Mr. Kester for visual problems.
 {¶ 9} Dr. Rosenblat began his testimony by venturing the following opinion:
 Mr. Kester received substandard, if not negligent, postoperative care after the first operation from a surgeon perceived by his patient and family as proud, arrogant, and unworthy of disposition, who did not know when to ask for help and did not know how to hold their collective hand and guide them in an increasingly complicated case.
(Tr. 49.) Dr. Rosenblat agreed that the surgery performed by Dr. Brakel was medically indicated and offered no professional criticism of the use of the "Ray" cages to stabilize Mr. Kester's spine.[2] Dr. Rosenblat had the "impression" that Mr. Kester had a spinal fluid leak from the first surgery. (Tr. 57.) However, he testified that a spinal cord leak was a "routine complications, accepted complications." (Tr. 57.) Dr. Rosenblat did not find any fault in the antibiotics prescribed by Dr. Brakel or the duration of their use. In fact, when asked how long the antibiotics should be employed, appellants' expert could only state: "your guess is as good as mine." (Tr. 60.) Dr. Rosenblat felt that an infection developed sometime between the first and second surgeries performed by Dr. Brakel. However, he agreed that the only evidence of an infection was a slightly elevated white cell count. (Tr. 85.) He conceded that the use of prescribed steroids could elevate a white cell count. (Tr. 85.) Mr. Kester was taking steroid medication at the time.
 {¶ 10} Dr. Rosenblat also agreed that the only evidence that Mr. Kester ever had a fever came after his second surgery. (Tr. 86.) Yet, he maintained that Mr. Kester developed an infection between the first and second surgeries. (Tr. 87.) He also agreed that there was no objective evidence or symptoms of meningitis when Mr. Kester was hospitalized on September 10, 2001. (Tr. 99-100.) Dr. Rosenblat did not offer an opinion that anything that Dr. Brakel did or failed to do was the proximate cause of any injury to Mr. Kester.
 {¶ 11} Almost a year after the first surgery performed by Dr. Brakel, Mr. Kester contacted Dr. Katz complaining of vision problems. Dr. Katz found that Mr. Kester's optic nerves were swollen. He was of the opinion that the swelling was caused by inflammation or infection of the spinal fluid. (Tr. 256.) However, when pressed for the basis of his opinion, Dr. Katz conceded that there was no specific evidence to support his belief that Mr. Kester had meningitis. Knowing that two infectious disease specialists were of the opinion that Mr. Kester did not have meningitis caused Dr. Katz to have less confidence in his own opinion. (Tr. 267.) Dr. Katz offered no opinion that suggested Dr. Brakel's surgery or post-operative care was the cause of any inflammation or infection in Mr. Kester's spinal fluid.
 {¶ 12} Ultimately, no expert testified that, had Dr. Brakel done anything differently, the outcome of Mr. Kester's surgery and post-operative care would have been different. At the conclusion of appellants' case, appellees orally moved for a directed verdict on the basis that appellants failed to offer any expert medical evidence on whether Dr. Brakel was the cause of any injury to Mr. Kester. Both sides presented memoranda to the trial court. The trial court found that appellants had failed to produce any evidence that appellees proximately caused any injury to Mr. Kester. The motion for directed verdict was granted and this appeal followed.
 {¶ 13} Appellants raise the following seven assignments of error:
 [I.] The simple essence of the Court's Decision is:
 (a) Proximate Causation must be proved by expert testimony and this was not done.
 (b) The various causes of action are really one cause, medical malpractice.
 [II.] The Court lumps all claims into a single claim of medical malpractice. This is clearly error.
 Among the theories raised by Plaintiffs both in pleadings and at trial are:
 (a) Lack of Informed Consent,
 (b) Negligence,
 (c) Abandonment,
 (d) Failure to use prophylactic antibiotics,
 (e) Loss of consortium,
 (f) Loss of enjoyment of life,
 g) Medical Malpractice.
 [III.] Lack of Informed Consent
 This is totally a matter of fact between the testimony of the patient (and spouse) and the Defendant. Expert testimony is of no concern here.
 [IV.] Abandonment of the Patient
 In times of medical emergency or extreme concern, the physician was not available to the patient. The implicit contract between the patient and the physician was for him to be "his doctor". It can be called the "shingle theory". Among other things, he breached that contract.
 [V.] Failure to use Prophylactic antibiotics
 It is a contested fact as to whether appropriate preventative antibiotics were used.
 [VI.]-Loss of enjoyment of life, loss of consortium, permanent disability[.]
 [VII.]-Taking the case away from the jury.
 {¶ 14} Appellants present the following issues for review:
 1. Does a finding of proximate cause have to be supported by expert testimony, as was this testimony present or absent? Is proximate cause a jury issue?
 2. Is there one claim here — "Medical malpractice" or are there multiple claims here?
 {¶ 15} At the outset, we address an issue that was not raised as an assignment of error. Appellants question whether the trial court granted a directed verdict under Civ.R. 50 or a summary judgment under Civ.R. 56. (Appellants' brief, at 7.)
 {¶ 16} At the close of appellants' evidence, the defense orally moved for a directed verdict. After hearing argument and receiving memoranda from the parties, the trial court orally granted the motion for directed verdict. The trial court explained the basis for its decision in open court.[3] (Tr. at 631-637.) The oral pronouncement was reduced to a judgment entry that was filed on February 15, 2006. The judgment entry is captioned: "Judgment Entry Granting Directed Verdict Motion of Defendants." In the third line of the entry, the trial court referred to the motion as one for summary judgment. From this single reference, appellants question whether the court granted summary judgment or directed verdict.
 {¶ 17} After the single reference to summary judgment, on three occasions in the remainder of the entry, the court correctly identified the motion as one for directed verdict. It is apparent that the trial court was faced with a motion for directed verdict and granted a directed verdict. One inadvertent reference to summary judgment does not change the nature of the motion or the ruling of the trial court. If appellants intended this issue to be an assignment of error, it is overruled.
 {¶ 18} We next address the assignments of error raised by appellants. Civ.R. 50 governs the subject of directed verdict. As pertinent to this appeal, Civ.R. 50(A)(4) provides as follows:
 * * * When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.
The rule is mandatory. After review under the standard set out above, if the court finds that reasonable minds could not differ on an issue that is a necessary element of the opposing party's case, the court is required to direct a verdict for the moving party.
 {¶ 19} In this instance, the trial court directed a verdict for the defendants based upon the failure of appellants to present evidence that appellees were the proximate cause of any injury to Mr. Kester. Our review of the trial court's decision to grant a directed verdict is de novo. Santho v. Boy Scouts of America, 168 Ohio App.3d 27,2006-Ohio-3656, at ¶ 10.
 {¶ 20} We first address appellants' second assignment of error and the assertion that this case involves more than a claim for medical malpractice. Appellants argue that "[t]he Complaint states a variety of theories as does the evidence elicited at trial." (Appellants' brief, at 11.) Appellants go on to say: "Among the theories raised by Plaintiffs both in pleadings and at trial are: (h) Lack of Informed Consent, (i) Negligence, (j) Abandonment, (k) Failure to use prophylactic antibiotics, (l) Loss of consortium, (m) Loss of enjoyment of life, (n) medical malpractice." (Id. at 11.) According to appellants, the case involved separate claims under each theory.
 {¶ 21} We have reviewed the complaint filed by appellants to determine whether separate causes of action were alleged. The caption of the complaint states the claims raised by both appellants: "CLAIM FOR RELIEF OF PLAINTIFF RONALD L. KESTER AGAINST ALL DEFENDANTS FOR MEDICAL NEGLIGENCE" and "CLAIM FOR RELIEF OF PLAINTIFF JEANNINE KESTER AGAINST ALL DEFENDANTS FOR MEDICAL NEGLIGENCE."
 {¶ 22} In the body of the complaint, only medical negligence is alleged. Paragraphs one, two and three identify the several known defendants. Paragraph four alleges medical negligence by Jane and John Doe defendants. Paragraph five states that Mr. Kester sought medical care from Dr. Brakel. Paragraphs six and seven allege medical negligence by Dr. Brakel. Paragraphs eight through 12 allege that Mr. Kester was damaged as a result of the medical negligence of the defendants.
 {¶ 23} Paragraph 13 alleges that Dr. Brakel was either an agent or employee of Mt. Carmel East Hospital and Mr. Kester sought medical care at that facility. Paragraph 14 claims that Mr. Kester sought medical care at Mt. Carmel East Hospital where Dr. Brakel performed the spinal surgery. Paragraph 15 alleges that Dr. Brakel and Neurosurgical and Spine Surgeons of Central Ohio, Inc., cared for Mr. Kester after the first surgery. Paragraphs 16 and 17 allege that St. Ann's Hospital was negligent in the care and treatment of Mr. Kester. Paragraph 18 relates to the extension of the statute of limitations under R.C. 2305.11(B)(1). Paragraphs 19 through 21 set out Jeannine Kester's loss of consortium claim based on the medical negligence of the several defendants.
 {¶ 24} In sum, the complaint alleged the professional tort of medical malpractice and nothing else. Even accepting for purposes of discussion that appellants' several theories of liability amount to separate causes of action, appellants did not plead them in the complaint. The only claim before the trial court was medical malpractice. Therefore, the second assignment of error is overruled.
 {¶ 25} We next turn to appellants' first assignment of error. Although not set out in the first assignment of error, we assume appellant's position is that expert medical testimony is not required to prove the element of proximate causation in a medical malpractice case.
 {¶ 26} In order to establish medical malpractice, the plaintiff must prove by a preponderance of the evidence that the injury complained of was proximately caused by medical care or treatment that fell below the recognized standards of medical care in the community. Bruni v.Tatsumi (1976), 46 Ohio St.2d 127, 131-132. The failure to prove that the recognized standards of the medical community were not met or to prove that the failure to meet those minimum standards proximately caused the injury is fatal to a claim of medical malpractice.
 {¶ 27} Because the standards of the medical community are not common knowledge, the general rule is that the plaintiff must prove causation through expert medical testimony. Roberts v. Ohio Permanente MedicalGroup, Inc. (1996), 76 Ohio St.3d 483; Shumaker v. Oliver B. Cannon Sons, Inc. (1986), 28 Ohio St.3d 367.
 In a negligence action involving the professional skill and judgment of a nurse, expert testimony must be presented to establish the prevailing standard of care, a breach of that standard, and that the nurse's negligence, if any, was the proximate cause of the patient's injury.
Ramage v. Central Ohio Emergency Serv., Inc. (1992), 64 Ohio St.3d 97, paragraph one of the syllabus. Where a plaintiff has failed to offer expert medical testimony to prove that the injury was proximately caused by the deviation from the standard of care, a directed verdict for the defense is proper. Schwimmer v. Bowsher (1993), Franklin App. No. 92AP-1140, discretionary appeal denied, 67 Ohio St.3d 1411.
 {¶ 28} Assuming for purposes of discussion that appellants' experts established that Dr. Brakel's medical care fell below the recognized standard of care in the medical community, neither of appellants' medical experts gave an opinion that any act or omission of Dr. Brakel was the proximate cause of Mr. Kester's injury. Therefore, the trial court properly directed a verdict for appellees on the medical malpractice claim. The first assignment of error is overruled.
 {¶ 29} In passing, we note that although appellants failed to plead the tort of lack of consent, had that tort been included in the complaint, the result would not differ. The tort of lack of informed consent may occur when: (1) the physician fails to disclose to the patient and discuss the material risks and dangers inherently and potentially involved with respect to the proposed medical therapy, if any; (2) the unrevealed risks and dangers which should have been disclosed by the physician actually materialize and are the proximate cause of injury to the patient; and (3) a reasonable person in the position of the patient would have decided against the medical therapy had the material risks and dangers been disclosed. Nickell v.Gonzalez (1985), 17 Ohio St.3d 136, 139. See, also, Bruni, supra.
 {¶ 30} The law of informed consent has never required that the physician fully inform the patient of all potential risks. Bedel v.Univ. of Cincinnati Hosp. (1995), 107 Ohio App.3d 420, 427. Therefore, expert medical testimony is required to prove what a reasonable medical practitioner would have disclosed to his patient about the risks incident to the proposed treatment in order to support an informed consent claim. Bader v. McGregor, Franklin App. No. 03AP-167,2004-Ohio-4036, discretionary appeal allowed, 104 Ohio St.3d 1459,2005-Ohio-204, discretionary appeal dismissed as improvidently allowed,107 Ohio St.3d 1210. Accord, Maglosky v. Kest, Cuyahoga App. No. 85382,2005-Ohio-5133, at ¶ 34, and cases cited therein.
 {¶ 31} Appellants do not point to portions of the transcript that demonstrate expert testimony on what a reasonable medical practitioner would have disclosed to his patient about the risks of the proposed medical therapy. Therefore, although appellants failed to plead a cause of action for the tort of informed consent, had they properly included that cause of action in their complaint, a directed verdict for the defense would have been appropriate.
 {¶ 32} We have reviewed the evidence presented at trial and find that appellants' failed to present expert testimony on the element of causation to satisfy their burden of proof on their medical malpractice claim. Without expert testimony on causation, no jury could find that the defendants were the proximate cause of any injury to Mr. Kester. Therefore, the trial court was obligated to grant the motion for a directed verdict. Because Jeannine Kester's claim derives from her husband's medical malpractice claim, the failure to present expert testimony to causation is fatal to her cause of action as well. The seven assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BRYANT and KLATT, JJ., concur.
[1] Appellants voluntarily dismissed defendants Mt. Carmel East Hospital and St. Ann's Hospital on March 29, 2004.
[2] Dr. Rosenblat had a personal preference for other surgical techniques, but could not fault the use of a "Ray" cage.
[3] Civ.R. 50(E) requires that when a court grants a directed verdict, the court must state in writing the basis for its decision. The basis for the decision may be dictated into the record or included in the judgment entry. Here, the trial court explained the basis for its decision on the record in open court.