DECISION AND JOURNAL
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellants/Cross-Appellees (collectively referred to as Appellants), B.E.S. of Ohio ("BES"), Dr. James Martin ("Dr. Martin") and Bridgett McCluskey ("McCluskey"), appeal from the judgment of the Summit County Court of Common Pleas. We reverse and remand the cause for a new trial.
 I. {¶ 2} On June 4, 2001, Appellees/Cross-Appellants, Amy and Karl Schmidt ("the Schmidts") visited BES, an urgent care facility, because Amy Schmidt was complaining of chest and abdominal pains. Dr. Martin, employed by BES, examined Mrs. Schmidt and ordered a blood test. McCluskey, a medical *Page 2 
assistant at BES, drew Mrs. Schmidt's blood. The parties disagree on what occurred during this blood test. The Schmidts claim that due to Appellants' negligence, Mrs. Schmidt sustained an injury to a nerve in her right wrist which led to reflex sympathetic dystrophy, a permanent injury. The Schmidts filed their initial complaint on November 8, 2002. They voluntarily dismissed their case on May 23, 2003 and then re-filed on March 18, 2004. The Schmidts asserted that BES was negligent in permitting McCluskey to perform an invasive procedure because McCluskey was neither certified nor adequately trained to perform such a procedure. Similarly, the Schmidts alleged that McCluskey negligently performed the blood draw.
 {¶ 3} The case was heard over six days and on October 12, 2005, the jury returned a $750,000.00 verdict in the Schmidts' favor. It is from this judgment that Appellants timely appeal, raising two assignments of error for our review.
 {¶ 4} On October 25, 2005, the Schmidts filed a motion for prejudgment interest, contending that Appellants failed to make a good faith effort to settle the case before it went to trial. Appellants filed a motion to quash the Schmidts' discovery subpoena that was filed on November 3, 2005. The Schmidts moved for a pretrial to regulate the discovery. At the pretrial, the trial court ordered Appellants to submit the requested documents for an in camera review, to determine what, if any, documents were discoverable. The trial court deemed some of the documents discoverable and Appellants filed a motion for protective *Page 3 
order. The Schmidts then filed a response and a motion to compel. The trial court, without responding to these motions and without an oral hearing, denied the Schmidts' motion for prejudgment interest and denied all other motions as moot. The Schmidts cross-appealed from the denial of their motion for prejudgment interest, raising one assignment of error for our review.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT REFUSED TO PERMIT APPELLANTS TO CROSS EXAMINE [MRS. SCHMIDT] REGARDING A PRIOR CRIMINAL CONVICTION FOR A CRIME INVOLVING DISHONESTY."
 {¶ 5} In their first assignment of error, Appellants contend that the trial court committed prejudicial error when it refused to permit them to cross examine Mrs. Schmidt regarding a prior criminal conviction for a crime involving dishonesty. We agree.
 {¶ 6} "The trial court is afforded broad discretion in ruling on the admissibility of evidence, and its decision will not be overturned unless there is a clear abuse of discretion and material prejudice to the defendant." State v. Blanch (Sept. 2, 1998), 9th Dist. No. 18780, at *2, citing State v. Hymore (1967), 9 Ohio St.2d 122, 128. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. An abuse of discretion *Page 4 
demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621.
When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. Id.
 {¶ 7} Evid.R. 609(A)(3) states, in relevant part:
 "[f]or the purpose of attacking the credibility of a witness: * * * (3) notwithstanding Evid.R. 403(A), but subject to Evid.R. 403(B), evidence that any witness, including an accused, has been convicted of a crime is admissible if the crime involved dishonesty or false statement[.]"
 {¶ 8} Evid.R. 403 states:
 "(A) Exclusion mandatory
 "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
 "(B) Exclusion discretionary
 "Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence."
 {¶ 9} "Evid.R. 609(A)(3), which allows the admission of prior convictions, expressly states that evidence admitted pursuant to that section is only subject to Evid.R. 403(B). Thus, evidence of the prior conviction is mandated unless outweighed by undue delay or cumulative evidence." Carr v. Carr (Nov. 20, 1996), 4th Dist. No. 95CA1702, at *2. We find the staff notes to Evid.R. 609 particularly persuasive in this case. The notes state that "[division (A)(3) concerns dishonesty and false statement convictions. Because of the high *Page 5 
probative value of these convictions in assessing credibility, they are not subject to exclusion because of unfair prejudice." 1991 Staff Note to Evid.R. 609(A)(3). Therefore, a consideration of unfair prejudice under Evid.R. 403(A) would be inappropriate to convictions of this type.
 {¶ 10} "Pursuant to Evid.R. 609(A)(3) crimes of deceit are subject to a less stringent standard of admissibility." State v. Wright (June 24, 1998), 7th Dist. No. 96-C0-34, at *2. Where credibility is at issue, evidence of a conviction of a crime of dishonesty is especially relevant and material to the trier of fact. Id. This is so because a crime of dishonesty has a direct impact on witness' credibility regarding testimony at trial. Id. In the present case, Appellants attempted to introduce Mrs. Schmidt's prior conviction of theft by deception. This would clearly be a crime involving dishonesty contemplated by Evid.R. 609(A)(3). See Carr, supra, at *2. At trial, Appellants' counsel proffered on the record that he would have questioned Mrs. Schmidt regarding a 1998 felony conviction involving a theft charge for receiving money from the Department of Welfare by deception. The Schmidts stated on the record that the argument against the admission of the conviction was based on Evid.R. 403(A), "that admitting such evidence would be unfairly prejudicial and that was the basis for our objection to the admission of such." The Schmidts made no argument below or to this Court regarding Evid.R. 403(B). The trial court determined, in light of these discussions, that it would be *Page 6 
"unduly prejudicial for [the conviction] to come into evidence, and, therefore, it will be denied."
 {¶ 11} "[Evidence that the defendant has been convicted of a crime involving dishonesty or false statement is automatically admissible, regardless of the punishment and without consideration of unfair prejudice." State v. Martin, 12th Dist. Nos. CA2002-10-111, CA2002-10-115, CA2002-10-116, 2003-Ohio-6551, at ¶ 21, citing Evid.R. 609(A)(3). Therefore, we find the trial court used an improper standard in ruling on admission of this evidence, and its refusal to admit evidence of a crime involving dishonesty was unreasonable and arbitrary. Accordingly, the trial court abused its discretion. Further, in light of the material prejudicial effect this exclusion had on Appellants', as further outlined below, we reverse and remand the cause for a new trial.
 {¶ 12} The main issue at trial was whether McCluskey breached her duty of care during Mrs. Schmidt's blood draw (venipuncture). "`In a negligence action involving the professional skill and judgment of a nurse, expert testimony must be presented to establish the prevailing standard of care, a breach of that standard, and that the nurse's negligence, if any, was the proximate cause of the patient's injury.'"Kester v. Brakel, 10th Dist. No. 06AP-253, 2007-Ohio-495 at ¶ 27, quoting Ramage v. Central Ohio Emergency Serv., Inc. (1992),64 Ohio St.3d 97, paragraph one of the syllabus. According to the testimony of defense expert, Dr. David Preston, Mrs. Schmidt's injury was "a known risk of venipuncture, even if *Page 7 
it's done completely correctly." Therefore, the fact that all parties in this case agree that the blood draw was the proximate cause of Mrs. Schmidt's injury does not necessarily lead to the conclusion that McCluskey was negligent and breached the standard of care. Dr. Preston further testified that "if a patient gives a descriptor, gives some adjectives that tell a doctor or a nurse or a medical assistant that the nerve is being irritated, then the needle should be withdrawn." He explained that an adequate descriptor would be that the patient felt an "electric or shooting or a tingling-type pain[.]" Dr. Preston stated "I think there's no way that phlebotomists or a medical assistant would ever be expected to recognize that the nerve was being irritated or traumatized by the needle if the patient didn't use those descriptors as we discussed before."
 {¶ 13} McCluskey testified that during the blood draw, Mrs. Schmidt told her that it hurt and that she could feel it to her thumb. McCluskey stated that these complaints were common and led her to believe it was simply the discomfort normally associated with blood draws. Contrary to this, Mrs. Schmidt testified that she yelled that it hurt, and that her back was arched and body tensed. Both Mrs. Schmidt and her husband stated that when McCluskey initially inserted the needle, there was not an initial flash of blood and that McCluskey "wiggled" the needle. It is uncontested that if McCluskey wiggled the needle, she breached the standard of care. McCluskey denied Mrs. Schmidt's allegation that she wiggled the needle and stated that there was a flash of blood immediately after insertion of *Page 8 
the needle. Further, McCluskey testified that the entire process took approximately 30 seconds to a minute, while Mrs. Schmidt and her husband testified that it took several minutes.
 {¶ 14} The Schmidts' expert, Dr. Engstrand ("Engstrand"), testified based on the Schmidts' version of events. Engstrand testified that McCluskey deviated from the standard of care when, according to the Schmidts, she "wiggled" the needle. The jury heard expert testimony regarding the standard of care based upon one account of the disputed events. Accordingly, the credibility of both McCluskey and the Schmidts was highly relevant to the jury in evaluating the expert testimony before them.
 {¶ 15} Finally, on cross examination, Dr. Martin, who ordered the blood test and supervised McCluskey, was asked: "We can agree if Mr. and Mrs. Schmidt are to be believed, you would agree that the standard of care required that McCluskey remove the needle immediately?" * * * We can also agree that if the Schmidts are to be believed and McCluskey wiggled the needle, that would be below the standard of care?" Dr. Martin answered these questions in the affirmative. This line of questioning, "if the Schmidts are to be believed", aptly points out that credibility was a main issue in determining whether McCluskey breached the standard of care and was therefore negligent in causing Mrs. Schmidt's damages. (Emphasis added.) *Page 9 
 {¶ 16} The trial court, in its explanation as to why it would exclude the evidence, explained that "the jury not only heard her testimony but they also heard the husband's testimony. So it was not a sole reliance on her testimony, although needless to say, her testimony was significant in terms of that particular claim on the part of the plaintiff." Evidence relating to Mrs. Schmidt's credibility may also factor into the jury's determination of her husband's credibility and how much weight to give his corroborating testimony.
 {¶ 17} The trial court's decision that evidence of a crime of dishonesty was "unduly prejudicial" was in error and resulted in material prejudice to Appellants. Accordingly, Appellants' first assignment of error is sustained. We reverse and remand the cause for a new trial.
 ASSIGNMENT OF ERROR II "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY PERMITTING [THE SCHMIDTS] TO ARGUE AND PRESENT TESTIMONY THAT APPELLANT B.E.S. WAS NEGLIGENT FOR PERMITTING MCCLUSKEY TO DRAW BLOOD WITHOUT BEING LICENSED OR CERTIFIED."
 CROSS-APPELLANT'S ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED WHEN IT FAILED TO ALLOW [THE SCHMIDTS] TO DISCOVER NON-PRIVILEGED INFORMATION IN THE INSURER'S FILE AND FAILED TO CONDUCT A HEARING FOR THEIR PREJUDGMENT INTEREST MOTION." *Page 10 
 {¶ 18} In light of our disposition of Appellants' first assignment of error, we need not address Appellants' second assignment of error or the Schmidts' cross-assignment of error.
 III. {¶ 19} Appellants' first assignment of error is sustained. We decline to address Appellants' second assignment of error or the Schmidts' cross-assignment of error. The judgment of the Summit County Court of Common Pleas is reversed and remanded for a new trial.
Judgment reversed and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this *Page 11 
judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellees/Cross-Appellants.
SLABY, P. J.
CARR, J.
 CONCUR *Page 1