JOURNAL ENTRY and OPINION
{¶ 1} Plaintiff-appellant Carl Sharpley ("appellant"), administrator of the estate of Tony Sharpley, is appealing the trial court's granting of defendants-appellees' motion for summary judgment. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm the trial court.
 I. {¶ 2} Appellant filed a complaint on July 23, 2002 for the wrongful death of his 17-year-old son. Appellant's son, Tony Sharpley ("Tony"), drowned in a pond located at 9446 Sperry Road in Kirtland on July 24, 2001. The property is owned by defendants Richard and Mary Boles and leased to defendant-appellee John Sullivan ("Sullivan"). The Boles were dismissed from the lawsuit on May 29, 2003. On June 16, 2003, defendants-appellees moved for summary judgment, which the trial court granted on August 11, 2003. Appellant is now appealing this summary judgment ruling.
 {¶ 3} The property leased by Sullivan consisted of a building with an apartment, as well as surrounding undeveloped land with a man-made pond on it. The pond has been there since 1995.[1]
Sullivan operated his landscaping business from this property, and Tony was his employee on July 24, 2001, the date of the accident.
 {¶ 4} Tony had gone swimming at the pond the previous year.[2] During the work day on July 24, 2001, Sullivan, Tony and another employee, Steve Cerne ("Cerne"), had been working together. The three of them talked about going swimming in the pond at the end of the day. After work, Sullivan drove all three men from Mentor to Kirtland, where the pond was located. After they arrived at Sullivan's property, Cerne and Tony went directly to the pond.[3] After returning some phone calls, Sullivan joined them and went into the water to swim. Tony then decided to go into the water and lowered himself into the pond from the dock area. He swam 30 feet from the dock[4] when he yelled, "John help" and then went under water without any struggle or panicky gestures.[5]
 {¶ 5} Cerne stated that he did not believe that Tony was in any distress nor was he concerned for his safety.[6]
Sullivan thought Tony was joking, but soon after began swimming toward him. He dove into the water several times but could not find Tony. In the meantime, Cerne called for emergency help; unfortunately, Tony drowned.
 II. {¶ 6} Appellant's first assignment of error states: "The trial court erred to the prejudice of plaintiff-appellant in granting defendants-appellees['] Motion for Summary Judgment where genuine issues of material fact exist as to the applicability of O.R.C. § 4123.74."
 {¶ 7} Appellant's second assignment of error states: "The trial court erred to the prejudice of plaintiff-appellant in granting defendants-appellees['] Motion for Summary Judgment where genuine issues of material fact exist as to the applicability of the recreational user statute (O.R.C. §1533.181)."
 {¶ 8} Appellant's third assignment of error states: "The trial court erred to the prejudice of plaintiff-appellant in granting defendants[']-appellees['] Motion for Summary Judgment where genuine issues of material fact exist as to the duty of care owed by defendants-appellees."
 {¶ 9} Due to the substantial interrelation of appellant's assignments of error and for the sake of judicial expediency, we shall address them together.
 {¶ 10} Civ.R. 56 provides that summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Norris v.Ohio Std. Oil Co. (1982), 70 Ohio St.2d 1; Temple v. WeanUnited, Inc. (1977), 50 Ohio St.2d 317.
 {¶ 11} In Dresher v. Burt (1996), 75 Ohio St.3d 280, the Ohio Supreme Court modified and/or clarified the summary judgment standard as applied in Wing v. Anchor Medina, Ltd. of Texas
(1991), 59 Ohio St.3d 108. Under Dresher, "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim." Id. at 296. "The nonmoving party has a reciprocal burden of specificityand cannot rest on mere allegations or denials in thepleadings." Id. at 293. (Emphasis added.) The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. Id. This court reviews the lower court's granting of summary judgment de novo.Brown v. Scioto Bd. of Commrs. (1993), 87 Ohio App.3d 704.
 {¶ 12} Appellant argues that Tony was an invitee on the property and, as such, Sullivan owed him a duty of ordinary care to protect him from an unreasonable risk of harm. It is fundamental that in order to establish a cause of action for negligence, the plaintiff(s) must show (1) the existence of a duty; (2) a breach of that duty; and (3) injury proximately resulting therefrom. Armstrong v. Best Buy Co.,99 Ohio St.3d 79, 2003-Ohio-2573, at 8.
 {¶ 13} In Ohio, the status of the person who enters upon another's land determines the scope of the legal duty the landowner owes to the entrant. Gladon v. Greater ClevelandRegional Transit Auth. (1996), 75 Ohio St.3d 312, 315. An invitee is one who enters the premises of another by express or implied invitation for some purpose that is beneficial to the owner. Id. If the entrant is an invitee, the landowner must exercise ordinary care for the invitee's safety and protection. Id. at 317. However, a landowner is not an insurer of an invitee's safety. Paschal v. Rite Aid Pharmacy, Inc. (1985),18 Ohio St.3d 203. Further, there is no duty to protect an invitee from known dangers, meaning dangers that are so obvious and apparent that the invitee may reasonably be expected to discover them and protect herself against them. Id. at 203-204.
 {¶ 14} In the case of children, the Ohio Supreme Court has held that children are "entitled to a degree of care proportioned to their inability to foresee and avoid the perils that they may encounter." Bennett v. Stanley (2001), 92 Ohio St.3d 35, 39. It is generally accepted that ponds, pools, lakes, streams, and other waters embody perils that are deemed obvious to children of the tenderest years. Long v. Manzo (Pa. 1996), 682 A.2d 370, 375.
 {¶ 15} Even though Tony was a minor, he was one year from the age of majority. Despite appellant's assertion that Tony lacked the mental capability to appreciate the dangers, the record reflects otherwise. Tony voluntarily entered the pond to go swimming. Given that Tony was able to handle a job and that he was 17 years old, we find that the open and obvious doctrine applies. As a result, no duty was owed to Tony.
 {¶ 16} Furthermore, this court finds that Sullivan did not owe any duty based on the doctrine of primary assumption of the risk. This doctrine negates any cause of action for negligence brought by a plaintiff who sustains injuries during a sporting or recreational event. Anderson v. Ceccardi (1983),6 Ohio St.3d 110, 114. See, also, Shaner v. Smoot, Carroll App. No. 712, 2001-Ohio-3429. The Ohio Supreme Court has held that "where individuals engage in recreational or sports activity, they assume the ordinary risks of the activity and cannot recover for any injury unless it can be shown that the other participant's actions were either `reckless' or `intentional' as defined in Section 500 and 8A of the Restatement of Torts 2d." Marchetti v.Kalish (1990), 53 Ohio St.3d 95, syllabus.
 {¶ 17} Moreover, "the determinative factor in a defendant's liability in sports and recreational activity cases is the conduct of the defendant himself, not the participant's or spectator's ability or inability to appreciate the inherent dangers of the activity." Gentry v. Craycraft,101 Ohio St.3d 141, 2004-Ohio-379, at paragraph 9.
 {¶ 18} In the instant case, Tony assumed the risk associated with swimming in a pond. There is no evidence in the record that Sullivan acted "reckless" or "intentional" in causing Tony's death. Both Sullivan and Cerne testified at deposition that Tony entered the pond by the dock and, although there was no horseplay, he suddenly went under water. Sullivan attempted to save him but, because of the darkness of the water, he was unable to find Tony in time. Neither Cerne nor Sullivan knew that Tony had difficulty swimming.
 {¶ 19} In sum, Tony was 17 years old. He was not a young child of tender years requiring constant adult supervision. In addition, there is no evidence that supervision would have changed the outcome. Indeed, there were adults present when Tony was swimming in the pond. Tony had been to the pond on a previous occasion without incident. Furthermore, appellant failed to produce any expert testimony or evidence of a breach of duty on the part of the defendants-appellees proximately causing Tony's death.
 {¶ 20} In the case sub judice, there is no evidence that defendants-appellees breached any duty owed to the plaintiff-appellant. The facts of this case are tragic and unfortunate; however, the trial court did not err in granting summary judgment.
 {¶ 21} Appellant's third assignment of error is overruled. The fact that there is no breach of duty is dispositive of appellant's appeal; therefore, appellant's first two assignments of error are moot.
Judgment affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Cooney, P.J., and Gallagher, J., Concur.
[1] Richard Bole's deposition, pgs.7-8, 11-12.
[2] Sullivan depo., p. 13.
[3] Cerne depo., p. 10.
[4] Cerne depo., p. 24.
[5] Cerne depo., pgs. 30-33; Sullivan depo., pgs. 26-27.
[6] Cerne depo., p. 24.