[Cite as *Kinnison v. Ohio State Univ.*, 2013-Ohio-4862.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

TIFFANY KINNISON, Admr., etc., et al.

Plaintiffs

v.

THE OHIO STATE UNIVERSITY

Defendant

Case No. 2011-08644

Judge Patrick M. McGrath

DECISION

{¶ 1} On March 7, 2013, defendant filed a motion for summary judgment pursuant to Civ.R. 56(B). On April 24, 2013, plaintiffs filed a response with leave of court. Plaintiffs' April 24, 2013 motion for leave to file long brief is GRANTED instanter. Defendant's motion is now before the court for a non-oral hearing pursuant to L.C.C.R. 4(D).

{¶ 2} Civ.R. 56(C) states, in part, as follows:

{¶ 3} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party

against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." *See also Gilbert v. Summit Cty.,* 104 Ohio St.3d 660, 2004-Ohio-7108, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317 (1977). The parties filed numerous depositions and the underlying facts are largely undisputed as contained in the deposition testimony. This case arises from the death of Jonathan Kinnison, age 10. Plaintiff Tiffany Kinnison (Kinnison) is the mother of both Jonathan and Jazmine Kinnison. On June 16, 2009, Jonathan and Jazmine spent the night at the home of Sharon Brewer and her family. On the afternoon of June 17, 2009, Kinnison went to the Brewers' home to pick up her children. At that time, Jonathan and Jazmine asked Kinnison whether they could attend a 4-H meeting and pool party with the Brewers that evening at the home of Donald (Bill) and Carol Funderburg. Both the Brewers' children and the Funderburgs' grandchildren were members of the Champion Drive 4-H Club, a 4-H club solely focused on teaching, breeding, and marketing swine. Kinnison gave her permission for Jonathan and Jazmine to attend both the 4-H meeting and the pool party with Brewer and her family. Jonathan was not a member of the 4-H Club, but he was interested in joining 4-H. Jonathan had attended previous 4-H meetings and swim parties with the Brewers.

{¶ 4} Kinnison told Jonathan before he left for the meeting to stay in the shallow end of the pool, and he stated that he understood. In her deposition, Kinnison stated that Jonathan could swim and "doggie paddle" but that he did not like to go under the water. (Kinnison Deposition, pg. 79, 81-82.) While still at her home, Brewer told the children to remain in the shallow end of the pool. Jonathan asked her if he could swim to the deep end of the pool, but she told him to remain in the shallow end. When they arrived at the pool party, Brewer reminded the children again to stay in the shallow end of the pool.

{¶ 5} At the Funderburgs' property, the 4-H meeting took place in a barn and began around 7:00 p.m. After the meeting concluded, the children were invited to stay

to swim in the pool. When the pool party began, Brewer entered the pool area and sat in a chair near the shallow end of the pool. Bill Funderburg sat near Brewer. Carol Funderburg stood near the gate which gave access to the pool area. Other adults were standing by the fence outside of the pool area. The Funderburgs' two grandchildren, Elliott and Celia Littlefield, were in the deep end of the pool during the pool party and had been asked by Bill Funderburg to watch the pool during the party. However, neither of them was a licensed lifeguard. Bill Funderburg stated in his deposition that he had his two grandchildren watch the deep end of the pool because 4-H did not provide anyone to supervise the pool. (Donald Funderburg Deposition, pg. 92.) The Funderburgs' pool had a rope with "floaties" on it visibly dividing the deep end of the pool from the shallow end. The pool had a diving board and a slide in the deep end of the pool. The Funderburgs had flotation devices and life jackets available for use that were located near the pool.

{¶ 6} Brewer stated in her deposition that she was watching the children in the shallow end of the pool. Brewer explained that she scanned the pool and saw Jonathan and her son Sam doing underwater flips in the shallow end of the pool. Brewer then looked at two of the girls swimming who had called to her. When Brewer scanned back to Jonathan, he was not there, at which point someone else yelled that there was a body at the bottom of the deep end of the pool.

{¶ 7} Celia Littleton pulled Jonathan out of the bottom of the deep end of the pool. Bill Funderburg began CPR and others assisted him in attending to Jonathan until rescue personnel arrived. A helicopter took Jonathan to Children's Hospital, but efforts to resuscitate him were unsuccessful.

{¶ 8} In its answer, defendant admits that it, The Ohio State University Cooperative Extension Service, the Darke County Extension Educator, and Champion Drive 4-H Club are all instrumentalities of the state, whose actions are the basis of plaintiffs' claims.

{¶ 9} Plaintiffs assert both a survivorship claim and a wrongful death claim. In their complaint, plaintiffs allege that defendant was negligent or reckless in failing to provide the proper safeguards and supervision of the pool and that such conduct proximately caused Jonathan's death.

{¶ 10} Defendant argues that it cannot be liable for negligence as a matter of law because Jonathan was engaged in a recreational activity, which requires a showing of intentional or reckless conduct. In response, plaintiffs assert that defendant is liable under a negligence standard for failing to properly supervise the pool party and that issues of material fact exist as to whether defendant's conduct was reckless.

{¶ 11} Defendant first contends that there is no liability under a negligence standard when one is engaged in a recreational activity. "[W]hether a defendant owes a plaintiff a duty is a fundamental aspect of establishing actionable negligence, and if there is no duty or obligation of care, no legal liability may arise from the negligent act. Defining the duty owed to a particular plaintiff, therefore, is of utmost importance in negligence cases." (Citations omitted.) *Albright v. Univ. of Toledo*, 10th Dist. No. 01AP-130 (Sept. 18, 2001). The Supreme Court of Ohio has held that "before a party may proceed with a cause of action involving injury resulting from a recreational or sports activity, reckless or intentional conduct must exist. * * * [W]here individuals engage in recreational or sports activities, they assume the ordinary risks of the activity and cannot recover for any injury unless it can be shown that the other participant's actions were either 'reckless' or 'intentional' as defined in Sections 500 and 8A of the Restatement of Torts 2d." *Marchetti v. Kalish*, 53 Ohio St.3d 95, 99-100 (1990). Additionally, "the reckless/intentional standard of liability applies regardless of whether the activity was engaged in by children or adults, or was unorganized, supervised, or unsupervised. * * * '[T]o hold otherwise would open the floodgates to a myriad of lawsuits involving the backyard games of children.'" *Gentry v. Craycraft,* 101 Ohio St.3d 141, 143, 2004-Ohio-379, ¶ 8, quoting *Marchetti*, *supra* at 98.

{¶ 12} "[T]he court in *Marchetti,* and later in *Gentry v. Craycraft* * * * made clear that it wanted to avoid an analysis that attempted to 'delve into the minds of children to determine whether they understand the rules of the recreational or sports activity that they are engaging in,' and to focus instead on 'the conduct or actions of the tortfeasor.' *Marchetti* at 99. By requiring that the tortfeasor in a recreational activity have acted either recklessly or intentionally, the court made clear that the tortfeasor must have actually intended the consequences of his act, or that he knew or should have known that his conduct could cause such consequences, thus making his behavior substantially worse than mere negligence." *Thompson v. Park River Corp.,* 161 Ohio App.3d 502, 2005-Ohio-2855, ¶ 52 (1st Dist.); *see also Estate of Vince v. Estate of Smallwood,* 11th Dist. No. 2005-T-0017, 2006-Ohio-1697, ¶ 20; *Morgan v. Ohio Conf. of the United Church of Christ,* 10th Dist. No. 11AP-405, 2012-Ohio-453; *Sharpley v. Bole,* 8th Dist. No. 83436, 2004-Ohio-5729.

{¶ 13} Jonathan died during a recreational activity while attending a function sponsored by defendant. The recreational activity doctrine applies even when the defendant was a provider of the activity rather than another participant in the activity. *See Santho v. Boy Scouts of America,* 168 Ohio App.3d 27, 2006-Ohio-3656, ¶ 14 (10th Dist.). Because Jonathan was engaged in the recreational activity of swimming, defendant owned no duty to him other than to refrain from intentional or reckless conduct.

{¶ 14} Plaintiffs argue that the recreational activity doctrine does not apply because drowning is not an accepted risk of swimming. The doctrine "does not apply in situations where the risk is not one that is inherent in the recreational activity itself." *Pope v. Willey,* 12th Dist. No. CA2004-10-077, 2005-Ohio-4744, ¶ 12. The recreational activity doctrine "has its genesis in the doctrine of primary assumption of the risk and is based on the rationale that a participant to a sporting event or recreational activity accepts the risks associated with the sport or activity." *Id.,* at ¶ 8. "A swimming pool

normally does not present a hidden danger involving an unreasonably dangerous condition; rather, the danger posed, *i.e.*, risk of drowning, is an open and obvious condition which even children of tender years are able to appreciate." *Mullens v. Binsky,* 10th Dist. No. 97APE11-1451, 130 Ohio App.3d 64, 70 (1997). Therefore, drowning is an inherent risk of swimming and "persons involved in recreational activities assume the ordinary risks of the activity * * *." *See Morgan, supra.* Accordingly, the recreational activity doctrine does apply to this case and the "recreation provider * * * owes no duty to a participant or spectator of an active sport to eliminate the risks inherent in the sport." *Santho, supra.*

{¶ 15} Furthermore, plaintiffs contend that defendant may be liable under a negligence standard inasmuch as defendant assumed the obligation "to secure the safety and well-being of the children attending the 4-H club event." (Plaintiffs' response, pg. 11.) Plaintiffs submitted the depositions of Rhonda Williams, the 4-H extension coordinator for Darke County and Vicki Schwartz, the Ohio 4-H Associate State Leader. Both Williams and Schwartz stated that one of the elements of 4-H is to provide a safe environment for its members and invited guests and Williams testified that 4-H clubs are encouraged to have recreational activities. However, as a matter of law, the recreational activity doctrine applies whether the activity was supervised or unsupervised. *Gentry, supra.* Additionally, to the extent that plaintiff argues that this is a case of negligent supervision, "[f]or a non-participant to be found liable in a recreational activity, it must be found that the non-participant either (1) allowed an activity to take place absent any management, or (2) allowed a participant with a known propensity for violence to engage in the activity." *Santho, supra,* at fn. 1. In this case, the uncontroverted evidence presented through deposition testimony establishes that several adults were in the pool area and at least two adults were watching the shallow end of the pool. Furthermore, there is no evidence that the participants exhibited violent behavior. Therefore, negligent supervision does not apply in this case.

{¶ 16} The material fact relating to plaintiffs' negligence claim is that Jonathan was engaged in a recreational activity at the time of his death. There is no dispute that he was swimming at a pool party. Therefore, construing the evidence most strongly in plaintiffs' favor, the only reasonable conclusion is that Jonathan was engaged in a recreational activity at the time of his death. Accordingly, plaintiffs' claims for negligence are barred as a matter of law and defendant is entitled to summary judgment on the negligence claims. Plaintiffs may recover only if defendant's conduct was reckless or intentional. *Marchetti, supra,* at 99-100. Plaintiffs do not allege any intentional conduct by defendant.

{¶ 17} Ohio has adopted the definition of recklessness contained in the Restatement of the Law 2d, Torts. The actor's conduct is in reckless disregard of the safety of another when an actor "does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." Restatement of the Law 2d, Torts, Section 500 (1965); *see also Marchetti, supra; Thompson v. McNeill,* 53 Ohio St.3d 102, 104-105 (1990)*.* "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Anderson v. City of Massillon,* 134 Ohio St.3d 380, 2012-Ohio-5711, ¶ 34; *see also Wolfe v. AmeriCheer, Inc.,* 10th Dist. No. 11AP-550, 2012-Ohio-941.

{¶ 18} Defendant filed the deposition of Thomas Griffiths, Ed.D., and plaintiff filed his affidavit which incorporates his curriculum vitae and expert report. Upon review of Griffiths' deposition and his expert report, Griffiths does not opine that defendant's conduct rose to the level of recklessness. Griffiths maintains several criticisms of defendant, including its failure to provide a lifeguard, failure to train 4-H supervisors on

pool safety, failure to designate specific adults at the party to watch specific children, and failure to provide "layers of protection" for the swimmers.

{¶ 19} According to the depositions that have been filed with the court, both Bill Funderburg and Sharon Brewer were in the pool area watching the children in the shallow end of the pool at the time that Jonathan drowned. Carol Funderburg testified that she was standing outside of the pool area guarding the gate but that she was watching the children in the shallow end of the pool while they were swimming. Additionally, Sharon Brewer testified that she told her children, Jonathan, and Jazmine, at least three times that that they needed to stay in the shallow end of the pool. Based on these facts, as a matter of law, plaintiff cannot prove that defendant was reckless by failing to provide a lifeguard at the pool party or by failing to designate specific adults to watch specific children.

{¶ 20} Additionally, Griffiths stated that defendant failed to train its 4-H supervisors on pool safety, but plaintiffs have provided no evidence that defendant had a duty to train its supervisors on pool safety. Williams and Schwartz both testified that as 4-H employees they never provided the advisors with training on swimming. However, there is no evidence that defendant intentionally failed to perform such a duty or that the 4-H employees and advisors recognized any facts that would lead them to believe that their conduct could or did create an unreasonable risk of harm to another. *See id.*

{¶ 21} Finally, to the extent that plaintiffs' expert opined that there should have been "layers of protection," defendant's failure to provide multiple layers of pool protection as suggested by Griffiths does not amount to recklessness. Such conduct does not exhibit conscious disregard of or indifference to a known or obvious risk. It is uncontroverted that several adults were near the pool area watching the children swim, that a rope visibly separated the deep end of the pool from the shallow end, that the Funderburgs had life jackets and flotation devices available for the swimmers, and that

both Sharon Brewer and Kinnison told Jonathan to stay in the shallow end of the pool. Even though Celia and Elliott Littlefield both testified that they were in the deep end of the pool and were facing away from the shallow end of the pool, this conduct does not, as a matter of law, rise to the level of recklessness under Ohio law; they did not consciously disregard the safety of the children swimming. Additionally, other adults were watching the children in the shallow end of the swimming pool.

{¶ 22} Plaintiffs have failed to present any evidence that defendant had a conscious disregard or indifference to a known or obvious risk of swimming. Although the issue of reckless conduct is a question for the trier of fact, the court finds that plaintiffs have failed to present any evidence that satisfies the high threshold required for a showing of reckless conduct. *See Marsh v. Heartland Behavioral Health Ctr.,* 10th Dist. No. 09AP-630, 2010-Ohio-1380, ¶ 24. In summary, the following steps were taken to ensure the safety of the swimmers:

{¶ 23}      Kinnison told Jonathan to stay in the shallow end of the pool;

{¶ 24}      Sharon Brewer told her children and the Kinnison children to stay in the shallow end of the pool at least three times;

{¶ 25}      Sharon Brewer and Bill Funderburg sat near the shallow end of the pool and watched the children swimming there;

{¶ 26}      Carol Funderburg stood outside of the pool area at the fence and watched the shallow end of the pool;

{¶ 27}      A rope in the pool visibly separated the shallow end of the pool from the deep end; and

{¶ 28}      Life jackets and flotation devices owned by the Funderburgs were available for use.

{¶ 29} Plaintiffs have failed to present any issue of material fact that defendant's conduct rose to the level of recklessness, and as a matter of law plaintiffs cannot prevail on their claims.

{¶ 30} Based on the foregoing, the court concludes that there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law. Accordingly, defendant's motion for summary judgment shall be granted and judgment shall be rendered in favor of defendant.

_____
PATRICK M. MCGRATH
Judge



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

TIFFANY KINNISON, Admr., etc., et al.

    Plaintiffs

    v.

THE OHIO STATE UNIVERSITY

    Defendant

Case No. 2011-08644

Judge Patrick M. McGrath

JUDGMENT ENTRY

{¶ 31} A non-oral hearing was conducted in this case upon defendant's motion for summary judgment. For the reasons set forth in the decision filed concurrently herewith, defendant's motion for summary judgment is GRANTED and judgment is rendered in favor of defendant. All previously scheduled events are VACATED. Court costs are assessed against plaintiffs. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
PATRICK M. MCGRATH
Judge

cc:

Daniel R. Forsythe
Peter E. DeMarco
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Scott D. Rudnick
121 West Third Street
Greenville, Ohio 45331

David R. Grant
55 Public Square, Suite 2222
Cleveland, Ohio 44113

007
Filed May 24, 2013
To S.C. Reporter October 31, 2013